**SUPERVALU, INC. (formerly Wetterau, Inc.) and Helmsman Management Services, Inc., Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BOWSER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 3, 1999.

Decided June 28, 2000.

Richard W. Dell, Pittsburgh, for petitioners.

James H. Owen, Kittanning, for respondent.

Before DOYLE, President Judge, and COLINS, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J. and LEADBETTER, J.

KELLEY, Judge.

Supervalu, Inc. (formerly Wetterau, Inc.) and Helmsman Management Services, Inc. (collectively, Employer) appeal

from that portion of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) dismissing Employer's review request regarding the disability benefits awarded to Joseph N. Bowser (Claimant) pursuant to the Workers' Compensation Act (Act).[1] We affirm.

On April 29, 1988, while employed as a fork lift operator with Employer, Claimant sustained a work-related injury to his left leg, involving the area from the knee through the foot. Specifically, Claimant sustained an open fracture of his left tibia and fibula, a dislocation of his left foot and a degloving injury to his left fifth toe which resulted in an amputation of that toe. Claimant received workers' compensation benefits pursuant to a notice of compensation payable.

On February 26, 1990, Claimant returned to work with Employer in a modified position. Claimant signed a supplemental agreement reflecting that he returned to work without any wage loss, and his disability benefits were suspended.

Subsequently, Claimant filed a claim petition in which he alleged a specific loss of use of his left foot. Claimant also sought the commutation of his disability benefits. On March 26, 1993, the WCJ granted the claim petition, finding that Claimant had lost the use of his left foot for all practical intents and purposes. The WCJ also granted Claimant's petition to commute

the 250 weeks of benefits payable to him as a result of this specific loss.

Claimant continued working in the modified position with Employer without a wage loss until April 13, 1994, when Employer closed its plant. On May 9, 1994, Claimant filed a reinstatement petition in which he alleged that, as a result of the plant closure, his compensable disability had recurred as of April 13, 1994. On June 9, 1994, Employer filed an answer denying that Claimant suffered a disability from his work-related injury.[2]

Finally, on September 25, 1995, Employer filed a petition to suspend Claimant's benefits alleging that Claimant's loss in earnings after April 13, 1994 was a result of the plant closure and not a result of his work-related injury. All of the petitions were consolidated and hearings before a WCJ ensued.

At the hearings, Claimant testified on his own behalf and presented the deposition testimony of Barry L. Reimer, M.D., a physician board certified in orthopedic surgery. Employer presented the deposition testimony of Rodney G. Gordon, M.D., a physician board certified by the Royal Australian College of Surgeons.

Claimant testified that he cannot run or jog, he cannot stand for long periods of time and he has difficulty standing on cement. Claimant also stated that he can only climb a couple of steps at a time and he can walk for about fifteen minutes.

Dr. Riemer testified that Claimant's condition has worsened since he completed his rehabilitation in that his leg has increased

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4; 2501—2626.

2. Subsequently, Employer voluntarily reinstated Claimant's total disability benefits as of his April 13, 1994 layoff. However, during the pendency of the proceedings and without objection, Employer amended its answer to Claimant's reinstatement petition converting it to a review petition based on the allegation that Claimant had suffered a specific loss of use of his lower left leg. Employer alleged that because Claimant's injury had resolved to a specific loss of use of his lower left leg for

all intents and purposes, he was entitled to specific loss benefits under the provisions of Section 306(c) of the Act which provides, in pertinent part:

> For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> ⁂
>
> (5) For the loss of a lower leg, sixty-six and two-thirds per centum of wages during three hundred fifty weeks...

77 P.S. § 513(5).

fatigability. Dr. Riemer also testified that Claimant has trouble with his foot, ankle calf and knee and that Claimant has crushed muscle in his leg up to his calf. Dr. Riemer stated that Claimant cannot run, cannot stand for a very long period of time and can climb only with great difficulty. He also stated that Claimant would not benefit from additional surgery unless Claimant had an amputation. Dr. Riemer explained that an artificial leg is more flexible than Claimant's ankle. Further, Dr. Riemer testified that an amputation would help to alleviate Claimant's pain. With regard to whether Claimant had lost the use of his lower left leg for all intents and purposes, Dr. Riemer testified that "that's pretty close to it", that Claimant would function better with an amputation than he is now, and that he would probably function better with a prosthesis than with what he has now.

Dr. Gordon testified that Claimant reported that he could walk about two miles with some difficulty, that standing and sitting was not a problem, that he cannot jog or run and that he limps all the time. Dr. Gordon stated that Claimant has very significant arthritis and a very significant disability with his left lower leg. Dr. Gordon stated that the lower leg's function is to move the foot and that Claimant's lower leg does not move his foot because the joints cannot move. Dr. Gordon opined that, based on his examination, Claimant functioned at a lesser level with his leg than someone would function with a below-the-knee amputation. As a result, Dr. Gordon testified that Claimant had lost the use of his left lower leg for all intents and purposes. According to Dr. Gordon, although Claimant is permanently disabled, he could perform the job of a sit-down forklift operator even if his lower left leg was amputated.

On September 25, 1996, the WCJ issued a decision and order disposing of the petitions in which he made the following relevant findings of fact:

8. [Claimant] has continued to the present time to have severe limitations caused by his injury. These include a stiff and inflexible left foot caused by post traumatic arthritis in all joints of that foot; severe restriction of left ankle movement; muscle and nerve damage in the calf of his left leg which reduces the power of calf muscles; and a restriction of motion of his left knee which causes minimal disability. The facts stated in this finding are based upon the testimony of Dr. Gordon and that of Dr. Riemer. There was not a significant difference in their testimony as to these stated restrictions, although they did differ somewhat as to detail and emphasis.

9. [Claimant] has not lost the use of his left lower leg for all practical intents and purposes. That portion of this leg which is between his knee and his ankle continues to have significant function. It enables him to walk for short periods of time; to stand for periods of time, especially on soft surfaces; to do limited climbing such as a couple of ladder steps; and to do work such as that which he was doing until he was laid off. The facts stated in this finding were not disputed by [Claimant] or by either physician.

10. [Claimant] has never recovered from his injury to a point where he can perform all of the duties which he was performing at the time of his injury. This finding is based upon the pertinent testimony of both physicians and upon [Claimant]'s testimony.

11. [Claimant] continues to the present time to be able to perform the modified work with a fork lift which he was performing until he was laid off. This finding is based upon the testimony of Dr. Gordon and upon that of [Claimant]. Dr. Riemer's testimony is rejected to the extent that he stated that [Claimant] is unable to perform this work. Dr. Riemer had doubts about [Claimant]'s ability to perform this work from its

inception, but [Claimant] did perform the work for almost 4 years and testified that he remains able to perform it. Dr. Riemer did not testify that there was any significant structural worsening of [Claimant]'s injured leg; he testified only that he is a little bit worse because of increased [fatigability].

\* \* \*

13. The Employer did not offer employment to [Claimant] after he was laid off but it did provide to all laid off employees, including [Claimant], an opportunity to apply for work elsewhere in its organization. [Claimant] did not complete such an application because he would have had to move his residence if he was accepted.

14. [Claimant]'s injury continues to cause a major adverse effect on his employability.

WCJ Decision, pp. 4–5.

Based on the foregoing, the WCJ made the following relevant conclusions of law:

1. The Employer has the burden of showing that [Claimant] has lost the use of his left lower leg for all intents and purposes. It also had the burden of showing that [Claimant]'s injury has resolved into such a loss. It did not meet either of these burdens.

2. The Supreme Court ruling in [*Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995)] does not apply to Claimant's situation because he has never been able to return to his normal job and because his earning capacity continues to be adversely affected by his injury.

3. [Claimant] was not required to apply for a job which would require him to relocate.

4. [Claimant] remains totally disabled within the meaning of the [Act].

5. The Employer's allegation that [Claimant]'s injury has resolved into the loss of his left lower leg should be dismissed.

6. The Employer's Suspension Petition should be dismissed.

*Id.* at pp. 5–6. As a result, the WCJ issued an order dismissing Employer's review request and suspension petition. *Id.* at p. 6.

On October 15, 1996, Employer appealed the WCJ's decision to the Board. On June 10, 1998, the Board issued an order and opinion affirming the WCJ's decision. Claimant then filed the instant petition for review in this Court.[3]

In this appeal, Employer claims that the Board erred in affirming the WCJ's decision because: (1) the WCJ erred as a matter of law in determining that Claimant did not suffer a specific loss of use of his lower left leg for all intents and purposes; and (2) the WCJ failed to issue a reasoned decision as defined by Section 422(a) of the Act.[4]

---

**3.** This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995); *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). Where, as here, the Board takes no additional evidence, this Court reviews the record in its entirety in order to determine whether the WCJ's factual findings are supported by substantial evi-

dence. *Ryan v. Workmen's Compensation Appeal Board (Community Health Services)*, 550 Pa. 550, 707 A.2d 1130 (1998). "Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.; Bethenergy Mines, Inc.; Republic Steel Corporation v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa. 1, 421 A.2d 1060 (1980).

**4.** Section 422(a) of the Act states:

Neither the Board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be

We initially note that whether a claimant has lost the use of a body part for all practical intents and purposes is a mixed question of law and fact. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Palmer)*, 659 A.2d 12 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 699, 670 A.2d 145 (1995). Whether a claimant has lost the use of a body part is a question of fact, as is the extent of the loss of that use. *Id.* However, once the fact finder has made a finding in this regard, this Court must then determine as a matter of law whether the loss is for all practical intents and purposes. *Id.*

It is well established that the WCJ, as fact finder, has exclusive province over questions of credibility and evidentiary weight, and the WCJ's findings will not be disturbed when they are supported by substantial, competent evidence. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa. Cmwlth. 164, 578 A.2d 83 (1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa. Cmwlth. 382, 539 A.2d 11 (1988). The WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa. Cmwlth. 461, 593 A.2d 921 (1991), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). It is not the function of this Court to reweigh evidence and to substitute its judgment for that of

the WCJ. *Vitelli v. Workmen's Compensation Appeal Board (St. Johnsbury Trucking Co.)*, 157 Pa.Cmwlth. 589, 630 A.2d 923 (1993), *petition for allowance of appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994).

Employer first contends that the Board erred in affirming the WCJ's determination that it did not meet its burden of establishing that the injury to Claimant's leg had resolved into a specific loss of the lower left leg. In particular, Employer argues that because both of the medical witnesses testified that Claimant would function better with an amputation and a prosthesis, a specific loss has been demonstrated as a matter of law. We do not agree.

As noted above, in denying Employer's request, the WCJ made the following relevant findings of fact:

8. [Claimant] has continued to the present time to have severe limitations caused by his injury. These include a stiff and inflexible left foot caused by post traumatic arthritis in all joints of that foot; severe restriction of left ankle movement; muscle and nerve damage in the calf of his left leg which reduces the power of calf muscles; and a restriction of motion of his left knee which causes minimal disability. The facts stated in this finding are based upon the testimony of Dr. Gordon and that of Dr. Riemer. There was not a significant difference in their testimony as to these stated restrictions, although they did differ somewhat as to detail and emphasis.

based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in con-

formity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.
77 P.S. § 834.

9. [Claimant] has not lost the use of his left lower leg for all practical intents and purposes. That portion of this leg which is between his knee and his ankle continues to have significant function. It enables him to walk for short periods of time; to stand for periods of time, especially on soft surfaces; to do limited climbing such as a couple of ladder steps; and to do work such as that which he was doing until he was laid off. The facts stated in this finding were not disputed by [Claimant] or by either physician.

WCJ Decision, p. 4. These findings are supported by substantial, competent evidence. As a result, they will not be disturbed on appeal. *Northeastern Hospital.*

Moreover, these findings support the WCJ's determination, as a matter of fact, that Claimant's injury has not resolved into a specific loss of his lower left leg. As the Pennsylvania Superior Court noted long ago:

In the eye cases cited above, it was determined that the employees had lost the use of the injured eyes even though the claimants were better off with their injured eyes than without them. In the case before us there is testimony that the claimant would be better off without the leg than with it. This is evidence from which the board could find that the claimant permanently lost the use of his leg for all practical intents and purposes.

There is evidence from which the board might have found that the claimant did not lose the use of his leg for all practical intents and purposes. There was evidence he could stand on it, and with the use of a brace and cane he could walk on it for a short distance, and there was medical testimony that he had some use of the leg. But, as has been said many times, it is not for the court to weigh the testimony and determine the facts.

We must consider only whether there is sufficient credible evidence to support the finding of the board. If the board believed the testimony that the claimant would have been better off with the leg amputated, it could properly find that he had lost the use of the leg for all practical intents and purposes. There was sufficient credible evidence to support the board's finding.

*Curran v. Walter E. Knipe and Sons, Inc.,* 185 Pa.Super. 540, 138 A.2d 251, 256 (1958).

In the instant case, the WCJ merely chose to rely on the testimony supporting its finding that Claimant did not lose the use of his lower left leg for all intents and purposes. Because this finding is supported by substantial, competent evidence, it is not the role of this Court to disturb this finding. *Northeastern Hospital; Curran.*

■ Finally, Employer contends that the WCJ's decision is not a reasoned decision as defined by Section 422(a) of the Act. With regard to the provisions of Section 422(a) of the Act, we have recently stated the following:

[C]ontrary to Claimant's assertion, it is patently beyond this Court's statutory scope of review to reject a WCJ's credibility determinations on appeal, and to make new findings of fact based on the evidence in the certified record. Rather, our review of the factual findings in this appeal is limited to determining whether or not they are supported by substantial evidence.

Likewise, in order to provide a meaningful basis for appellate review, a WCJ's decision must contain findings and the reasons for the adjudication. To this end, the WCJ must set forth the reasons for her findings, and she must include all of the findings necessary to resolve the issues that were raised by the evidence and which are relevant to her decision. Moreover, a WCJ's failure to explain specifically why she rejected certain testimony is not fatal to her adjudication and does not preclude effective appellate review.

* * *

In this case, the Board properly determined that the certified record contains substantial evidence supporting the WCJ's findings of fact. In addition, the Board properly determined that the WCJ provided an adequate explanation for her determination by outlining all of the evidence considered, stating the credible evidence on which she relied, and setting for the reasons for the ultimate denial of Employer's termination petition. As a result, the Board did not err in affirming the WCJ's decision.

*Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 753 A.2d 293, 305 (Pa.Cmwlth.2000) (citations omitted).

Likewise, in the instant case, the Board properly determined that the certified record contains substantial evidence supporting the WCJ's findings of fact, particularly those relating to the specific loss of Claimant's lower left leg. In addition, the WCJ's opinion also provides an adequate explanation for his determination by outlining the evidence considered, stating the credible evidence on which he relied, and setting forth the reasons for the ultimate denial of Employer's request. As a result, the Board did not err in affirming the WCJ's decision. *Id.*

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 28th day of June, 2000, the order of the Workers' Compensation Appeal Board, dated June 10, 1998 at No. A96–4057, is affirmed.

FRIEDMAN, Judge, dissenting.

For the reasons stated in my dissenting opinion in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),*

753 A.2d 293, (Pa.Cmwlth.2000), I agree with Supervalu, Inc. (formerly Wetterau, Inc.) and Helmsman Management Services, Inc. (together, Employer) that the workers' compensation judge (WCJ) failed to issue a reasoned decision as required under section 422(a) of the Workers' Compensation Act [1] (Act).

A reasoned decision is one wherein the WCJ, "when faced with conflicting evidence, ... adequately explain[s] the reasons for rejecting or discrediting competent evidence." 77 P.S. § 834. Even when the WCJ is faced with uncontroverted evidence, section 422(a) of the Act requires the WCJ to identify such evidence and adequately explain the *reasons for rejecting it.* Thus, although the reasoned decision requirement of the Act implicitly recognizes the WCJ's authority to reject uncontroverted evidence as incredible or unpersuasive, the WCJ now must state the reasons for such determinations. Uncontroverted evidence may not be rejected for no reason or for an irrational reason. 77 P.S. § 834.

Here, the WCJ's findings are completely devoid of any credibility determinations.[2] In addition, the WCJ failed to address most of the competent record evidence, including the uncontroverted evidence from both physicians that Joseph N. Bowser (Claimant) functions at a lesser level than someone with an amputation of the lower leg does. Consequently, I do not believe that this court can conduct a proper appellate review.

Without the necessary findings of fact, and absent adequately explained credibility determinations, I do not see how this court can be certain whether the WCJ ignored competent evidence, rejected the evidence or simply determined that it was not relevant to, or did not support, the finding of a specific loss. We may not

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834.

2. By failing to provide credibility determinations, this case even more clearly violates the reasoned decision requirement than *Daniels* where the WCJ stated which witnesses she found credible but offered no reason for rejecting conflicting, competent evidence.

engage in such speculation. Accordingly, I would remand this case to the WCJ with instructions that the WCJ issue a reasoned decision, enabling this court to properly perform its appellate role and to give meaning to the 1996 amendments to section 422(a) of the Act.

Judge PELLEGRINI joins this dissent.