**HARLEY DAVIDSON, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (EMIG, Jr.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 7, 2003.

Decided Aug. 13, 2003.

Daniel K. Deardorff, Carlisle, for petitioner.

Thomas P. Lang, York, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

COHN, Judge.

Harley Davidson, Inc. (Employer) appeals an order of the Workers' Compensation Appeal Board (Board) that affirmed, as modified, a decision of a Workers' Compensation Judge (WCJ) to grant the claim petition of William Emig, Jr. (Claimant) and award him disability benefits for the closed period from October 22, 1999 through May 10, 2000, and on-going medical benefits related to his work injury. On appeal, we must determine whether Claimant received medical benefits from Employer within three years of filing his claim petition, which would toll the limitations period in Section 315 of the Act.

Claimant has had a history of back pain since he injured it in the course of his employment on November 3, 1993. After the initial injury, Claimant missed a day or two of work and, then, returned with restrictions. He also underwent physical therapy treatments for about six months. Employer's workers' compensation insurance carrier at the time, Travelers, paid Claimant's medical expenses.[1] In November 1994, Claimant experienced a flare-up of his back problem, did not miss enough time from work to receive disability benefits, and, Travelers, once again, paid all of

---

1. Travelers was the workers' compensation insurance carrier for Employer from June 10, 1993 until June 10, 1996. CNA has insured Employer since that time.

his medical expenses. In either 1996 or 1997, Claimant again experienced back problems while at work and, after being evaluated at a local hospital, returned to work with restrictions and performed only light-duty jobs. Employer's workers' compensation insurance carrier at this time was CNA, which paid the medical bills generated by this incident.

Claimant experienced pain in his back on January 29, 1998, while attempting to move a piece of equipment at work. (Decision of WCJ, March 22, 2001, Finding of Fact (FOF) No. 12.) The next day, he reported the incident to his supervisor. (FOF No. 13.) The supervisor did not fill out an incident report because he did not consider Claimant's injury to be a new incident but, rather, a recurrence of a previous back injury. (Notes of Testimony (N.T.), 5/24/00 at 29.) He sent Claimant to the medical dispensary of Employer's plant. (FOF No. 13.) The company nurse would not treat Claimant because he did not have an incident report; she told him to see his family physician.[2] (N.T., 5/24/00 at 29.) The family physician would not treat Claimant because he felt the injury was work-related, and Claimant had no referral from his Employer. (FOF No. 13; N.T., 5/24/00 at 12.) Claimant then returned to work and the company doctor agreed to see him; the doctor told Claimant to go home and buy Motrin. (FOF No. 14; N.T., 5/24/00 at 14.) He did not refer Claimant to another doctor or order any type of diagnostic tests. (N.T., 5/24/00 at 14–15.)

In 1999, Claimant's back pain began to get worse. He missed approximately three weeks of work from late October through early November, returned to work for a short time, and then left work as completely disabled on December 16, 1999. From December 1999 until May 2000, Claimant received sick and accident benefits from Employer of $319.00 per week after taxes. (FOF No. 23.) He returned to work full-time on May 10, 2000 as a spot welder.

Because two carriers had paid his expenses over the years, Claimant filed two claim petitions against Employer; one named CNA as the responsible carrier and the other named Travelers.[3] The first claim petition alleged that the incidents which occurred in January 1998 and October 1999, when CNA was the carrier, resulted in his current disability.[4] The second claim petition, filed on May 24, 2000, alleged that the incident that occurred on November 3, 1993, when Travelers was the carrier, resulted in his current disability.[5] Both claim petitions were disputed by the respective carriers.

After two hearings, the WCJ concluded that Claimant sustained his burden to prove that he suffered a work-related injury on November 3, 1993, while in the course and scope of his employment, resulting in his total disability from October

---

2. The initial medical evaluation form, completed by Employer's in-house medical staff on February 9, 1998, reflects that Claimant told Employer that he was unsure of what may have caused his back pain. The staff also noted that Claimant "states [he] feels similar to other incident ... but cannot pinpoint specific event this time." (N.T., 5/24/00 at 30; Exhibit D–1.)

3. Claimant testified that he was told by a health and safety employee, also working with Employer, that he should also file a claim against Travelers. (Decision of WCJ, March 22, 2001, FOF No. 16.)

4. There is no evidence in the record of the date Claimant filed this first claim petition. The WCJ dismissed this claim petition against CNA in his Decision of March 22, 2001 (Order, No. 8), and Claimant has not appealed; therefore, it is not before us.

5. The second claim petition was filed on the same day as the first hearing before the WCJ in this matter.

22, 1999 through May 10, 2000. (FOF Nos. 34–36; Conclusion of Law (COL) No. 3.) The WCJ found that there never was a three-year period *between medical payments made by appropriate insurance carriers.* (FOF Nos. 32, 38, 39)(emphasis added). He concluded that Claimant established that Employer paid Claimant's medical expenses with the intent to toll the statute of limitations as set forth in Section 315 of the Workers' Compensation Act (Act),[6] and that Employer failed to sustain its burden of proving the medical payments were for a non-work-related injury or were identified as not workers' compensation (COL Nos. 4, 5.) Thus, in his order of March 22, 2001, the WCJ granted the claim petition, holding Travelers liable for the 1993 injury, and denied and dismissed the claim petition against CNA based on the 1998 and 1999 incidents. He also ordered that Employer pay disability benefits to Claimant at the rate of $472.53 per week for the time period between October 22, 1999 and May 10, 2000. Employer appealed the WCJ's decision to the Board. The Board affirmed the decision of the WCJ, with modification,[7] finding that the second claim petition, filed May 24, 2000,

was filed within three years of a medical payment made in 1998. Employer now appeals to this Court.[8]

On appeal, Employer requests that this Court reverse the decision of the Board for the following reasons: (1) the statute of limitations for the 1993 injury should not have been tolled because there was no evidence that subsequent medical payments were for the 1993 injury; (2) there was no proof that any medical expenses were paid by Employer within three years of Claimant's filing of the claim petition; and (3) Claimant failed to establish that his disability was related to the 1993 injury, because his medical expert did not comment on the issue. We will address these issues seriatim.

■ Employer first questions the WCJ's determination that Claimant's medical problems over a seven year period were related to the back injury that occurred on November 3, 1993. It is well established that the WCJ is the ultimate fact finder, and this Court is bound by his credibility determinations. *Trimmer v. Workers' Compensation Appeal Board (Monaghan Township)*, 728 A.2d 438 (Pa.

---

6. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 602. Section 315 states, in pertinent part:

> In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.... **Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition** ...
> (Emphasis added.)

7. The Board modified the WCJ's decision and granted Employer a credit for the time period

from November 12, 1999 through December 16, 1999, to reflect Claimant's earnings while he was working.

8. Our review in a workers' compensation case, where both parties presented evidence before the WCJ and the Board takes no additional evidence, is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights have been violated or whether an error of law has been committed. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

Cmwlth.1999). The WCJ is free to accept or reject the testimony of any witness, in whole or in part; "[i]t is not the function of this Court to reweigh evidence and to substitute its judgment for that of the WCJ." *Supervalu, Inc. v. Workers' Compensation Appeal Board (Bowser)*, 755 A.2d 715, 720 (Pa.Cmwlth.2000).

The WCJ found the testimony of Claimant to be credible and persuasive. (FOF No. 34.) He found that Claimant had never experienced back problems, was never involved in a motor vehicle accident, and had never sustained any type of fall or trauma to his back *prior* to his employment with Employer, nor had he sustained any non-work-related trauma or accident to his back *during* his employment with Employer. (FOF No. 20.) The WCJ also noted that "Claimant testified that he has had back pain almost everyday since his initial injury on November 3, 1993, and that he has never been totally pain free since 1993." (FOF No. 24.)

The WCJ also noted that Claimant saw Dr. Steven J. Triantafyllou, an orthopedic surgeon, in order to get a second opinion. (FOF No. 21.) The WCJ found the opinions contained in this doctor's October 16, 2000 narrative report to be credible and persuasive. (FOF No. 28, 35.) The WCJ noted that Dr. Triantafyllou reviewed Claimant's history and reviewed his medical records to determine that all of Claimant's back problems were related to his original back injury in November, 1993. (FOF No. 28.) Based on these findings, the WCJ concluded that Claimant sustained a work-related injury to his lower back on November 3, 1993, and has continued to experience periodic flare-ups of this original work-related injury. (COL Nos. 36, 37.) We find the WCJ's findings and conclusions to be well-supported by substantial evidence of record.

Employer next questions the WCJ's finding that the timing of payments from appropriate insurance carriers tolled the statute of limitations and allowed Claimant to timely file his claim petition. Section 315 of the Act has been characterized as a statute of repose that entirely extinguishes a claimant's right to compensation benefits unless, within three years of the date of the injury, the parties agree on the compensation payable or the claimant files a claim petition. *Golley v. Workers' Compensation Appeal Board (AAA Mid–Atlantic, Inc.)*, 747 A.2d 1253, 1255 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 569 Pa. 696, 803 A.2d 736 (2002). When neither of these requirements is met, as is the situation in the case *sub judice,* it is a claimant's burden to establish that the limitations period was tolled in order to assert a viable claim. *Id.* In order to toll the limitations period of Section 315, a claimant must prove that (1) "payments of compensation" were made within three years of filing the claim petition, and (2) that such payments were made by the employer with the intent they be "in lieu of workmen's compensation." *See Schreffler v. Workers' Compensation Appeal Board (Kocher Coal Company)*, 567 Pa. 527, 540, 788 A.2d 963, 971 (2002) (plurality opinion).

Claimant points to two instances which bring him within the statute. First, he argues that CNA paid a medical bill in 1997 (FOF No. 11). Employer does not dispute the payment, but rather, whether Claimant proved it was within three years of the date he filed his claim petition. Because Claimant filed his petition on May 24, 2000, CNA would have had to make the payment after May 24, 1997, in order for it to toll the statute. However, the WCJ did not make a finding regarding the specific date in 1997 the payment was made, and this Court, after thoroughly searching through the record, could find no evidence of the date payment was made. Thus,

there is no evidence that the payment was made in time to toll the statute.

 Second, Claimant argues that his visit to the company doctor on January 29, 1998, tolls the statute. To support this argument, Claimant must prove that a payment of compensation was made to the company doctor on his behalf under Section 315. The Supreme Court has defined "payments of compensation" as "an amount received and paid as compensation for injury or death of an employee, occurring in the course of employment." *Schreffler*, 567 Pa. at 534, 788 A.2d at 967 (quoting *Chase v. Emery Manufacturing Company*, 271 Pa. 265, 113 A. 840, 841 (1921) (interpreting similar language in a previous version of Section 315)). The Court stated that:

> It must clearly appear the amounts were so paid and received as compensation under the act, and not as wages for employment, and the disability or further disability must be attributable to an injury for which such compensation had been paid.

*Id.* Furthermore, as used in Section 315 of the Act, the term "payments of compensation" does not *require* that the **source** of the payments be an employer's workers' compensation carrier:

> Where, however, *payments of compensation* have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition: *Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on*

account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations.

77 P.S. § 602 (emphasis added). Thus, a fair reading of this statute allows payments of medical benefits which are for an occupational injury to constitute "payments of compensation" within the statute; a review of current case law supports this reading. *See Schreffler; Berwick Industries v. Workmen's Compensation Appeal Board (Spaid)*, 537 Pa. 326, 643 A.2d 1066 (1994); *Golley.*[9]

Here, the WCJ concluded that, based on evidence of record, Claimant was seen by Employer's company doctor following the worsening of his work-related back condition on January 29, 1998. (FOF Nos. 12, 13, 14; COL No. 3.) *See also* Clinical Data Follow–Up, 2/10/98, Claimant's Ex. 2, N.T., 5/24/00 at 32. The company doctor received payment from Employer for providing medical treatment to Claimant by virtue of receiving his salary. Thus, payment of compensation in the form of medical benefits was made on behalf of and received by Claimant for his work-related back injury.

 However, while payments of medical benefits **can** be considered "payments of compensation," they are not always so regarded. *See Schreffler.* The Supreme Court has also stated that such payments have to be paid and received "in lieu of compensation." A claimant must do more

---

**9.** The logic of this conclusion is supported by the purpose of Section 315, which protects "unwary employees" who may not have filed formal claim petitions because they were receiving on-going payments of their medical expenses. *Schreffler.* In his opinion in *Berwick Industries,* Chief Justice Cappy further explained that an employee could be "lulled into a false sense of security" if the statute was not tolled while the employee was receiving payments of medical expenses for his injury. *Id.,* 537 Pa. at 334, n. 6, 643 A.2d at 1070, n. 6.

than merely establish the receipt of benefits. *Schreffler*, 567 Pa. at 538, 788 A.2d at 969. Rather, the controlling determination is the *intent* with which the payments were made—did employer intend the payments to be in lieu of compensation. *Schreffler*, 567 Pa. at 538, 788 A.2d at 969–70; *Golley*, 747 A.2d at 1256. Thus, the claimant must adduce additional evidence demonstrating, at a minimum, that the employer had actual or constructive knowledge of a work-related injury. *Schreffler*, 567 Pa. at 538, 788 A.2d at 970.

There is no question in this case that Employer was fully aware of Claimant's medical problems and was actively involved in his treatment during the time period in question. In 1993, Claimant reported his initial injury to Employer and a workers' compensation claim was filed (FOF No. 3) and paid by Employer's workers' compensation insurance carrier at the time (FOF No. 6, 8). In 1996, Claimant was transported *from Employer's plant* by ambulance to the hospital for treatment of his back injury. (FOF No. 9.) He was placed on restrictions for several months and *only worked light duty jobs.* (FOF No. 10.) In 1997, Employer's workers' compensation insurance carrier paid Claimant's medical bills. (FOF No. 11.) Claimant reported his January 29, 1998 incident to his *supervisor* (FOF No. 13) and was seen by the *company doctor* for treatment (FOF No. 14). *Employer's* health and safety employee advised Claimant to file a claim against Employer's former workers' compensation insurance carrier for this incident. (FOF No. 16.)

It is not difficult to imagine that Claimant was lulled into a false sense of security regarding the filing of a claim petition for his 1993 injury where his medical expenses had been paid by Employer over a five-year period. Thus, because Claimant provided additional evidence that Employer was aware of his work-related injury, it follows that Claimant established that the payments were made "in lieu of compensation," as found by both the WCJ (COL No. 4) and the Board ("Claimant established that he sustained a work-related injury, that [Employer] had knowledge of his work injury, that he received medical treatment for a work-related injury *paid for by [Employer]*, and that the payments or services were provided in lieu of compensation." (Board Opinion, p. 6) (emphasis added)).

Accordingly, the order of the Board is affirmed.[10]

### *ORDER*

**NOW**, August 13, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

10. Concerning Employer's third issue, unequivocal medical testimony is not needed where the causal connection between the injury and the disability is obvious, as in the case *sub judice. Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979). "[T]he absence of explicit testimony linking the injury to the disability will not preclude recovery where a[WCJ] who personally heard the medical evidence has determined that the requisite causation was present and the record as a whole supports the determination." *Stone Container Corporation v. Workmen's Compensation Appeal Board*, 50 Pa.Cmwlth. 384, 413 A.2d 17, 19 (1980). Further, Employer presented no evidence that Claimant's back injury and disability were related to any non-occupational illness or injury or that they were pre-existing.