## Herre Bros., Inc., Appellant, *v.* Rhoads.

Argued June 16, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Daniel W. Shoemaker,* with him *Allen H. Smith,* for appellant.

*Lavere C. Senft,* with him *Liverant, Senft and Cohen,* for appellee.

OPINION BY MONTGOMERY, J., September 15, 1966:

Plaintiff-appellant recovered a judgment of $8,-351.12 in an action of assumpsit based on three claims: (a) under a written contract for the construction of a

restaurant building; (b) a supplemental written contract for the furnishing of restaurant fixtures and kitchen equipment; (c) an oral agreement for additional restaurant fixtures and kitchen equipment. The jury allowed a recovery on each count, although in an amount which was less than plaintiff claimed. The jury also allowed the defendant-appellee the sum of $12,316.13 with costs on a counterclaim. The costs were awarded because the net amount of the awards was $3,965.01 in defendant's favor. Plaintiff's motion for a new trial, and defendant's motions for a new trial and for judgment n.o.v. having been overruled, judgments were entered in the sums of $8,351.12 for plaintiff and $12,316.13 plus costs for defendant. This appeal by plaintiff followed.

The issues to be decided by us relate only to the written contracts and not to the oral one which, plaintiff contended, contemplated specific charges for the items plaintiff furnished. Although defendant denied that the items furnished under the oral contract were to be charged at definite prices and alleged a "cost plus" basis for said items, the jury's verdict, in allowing the claim for the total of the specific charges, justifies the conclusion that it rejected defendant's contention that said contract was on a "cost plus" basis and accepted plaintiff's view of the contract.

The original contract, prepared by defendant's counsel, provided that the contractor (plaintiff), ". . . shall furnish all of the material and perform all of the work . . .", and that the owner (defendant) ". . . shall pay to the Contractor . . . the *actual* cost to the Contractor of all labor, materials and other proper charges as hereinafter specified, plus twelve (12%) per cent overhead plus five (5%) per cent profit", and that "It is understood and agreed that there shall be no charge for office supervision, purchasing and accounting." (Emphasis supplied)

Further provisions provided that the owner would make payments on account during the progress of the work upon billings submitted by the contractor monthly, which billings were to be based on the percentage of work completed and materials placed on the job site by the last day of the preceding calendar month and were to show in detail as completely as possible all money paid by the contractor during the previous months, including labor, payrolls and all receipted bills. Plaintiff's offer to prove the submission of said monthly statements and that they included the items in dispute was refused by the trial court.

The contract also required the contractor to comply with all laws and regulations bearing on the conduct of the work, be responsible for any damage or injury to adjacent property and the public, maintain such insurance as will protect it from claims under Workmen's Compensation Acts and from any other claims for damages for personal injury, with a provision therein for the protection also of the owner from such claims. It further provided that the contractor must carry fire insurance upon the structure and materials intended for use therein, the insurance to carry an endorsement for the owner's protection as his interest might appear.

The second or supplemental written contract was not so detailed and provided only that, "We propose to furnish all items of Restaurant Furniture, Kitchen Equipment and accessories as listed on the following addendum sheets, on a cost plus basis of twelve percent overhead plus three percent profit. *Cost shall include insurance and taxes on labor and material.*" (Emphasis supplied) It appears to be in the form of a proposal prepared and submitted by plaintiff and accepted by defendant.

The issues narrow to three questions: (a) under the written contracts are social security taxes, unem-

ployment taxes, premiums on liability and workmen's compensation insurance, and union welfare contributions for employees, all part of the cost of labor, for which an additional charge of fourteen per cent of the basic labor rate should be added, or are those items overhead expenses covered by the twelve per cent provision? (b) Is the owner entitled to the benefit of cash discounts secured by the contractor for prompt payment of its bills and for quantity purchases of materials which it kept as inventory in a warehouse maintained by it, without being liable for a portion of the warehouse costs for storing said materials? (c) Are the contracts definite on these questions, or so ambiguous as to require explanation or elaboration by oral testimony?

The lower court refused the admission of oral testimony offered to prove the understanding of the parties and the custom of the trade. In doing so the court interpreted the contracts in the owner's favor on all of the aforesaid points, thus eliminating from plaintiff's claim all items for insurance premiums, taxes and contributions, and giving the defendant the benefit of full discounts without contributions for warehouse expenses.

It is our conclusion that the contracts are not free from uncertainty as to the intention of the parties and that it was error for the lower court to refuse plaintiff's offers to establish the true intentions of the parties by oral testimony.

The lower court relied on the two cases of *Lytle, Campbell & Co. v. Somers, Fitler & Todd Co.,* reported in 276 Pa. 409, 120 A. 409 (1923), and 287 Pa. 485, 135 A. 117 (1926), which are considered leading cases on "cost plus" contracts. Although they are helpful, they do not completely answer the questions before us at this time. Neither case gives consideration to the particular items we are considering and the contract

there under consideration contained no provision for overhead expenses, said contract being "on a time and material basis, with ten per cent profit as compensation to the contractor . . ." In our present case there is a specific provision for overhead expenses. However, in neither case does the contract spell out of what overhead expenses consist. In the first *Lytle* case Mr. Justice KEPHART said at page 413, "Overhead, or general expenses, as applied to a business concern, producing a utility possessing the quality of value or wealth, as generally understood, include all administrative or executive costs incident to the management, supervision or conduct of the capital outlay or its business. They are to be distinguished from operating charges, or those items inseparably connected with the productive end. The latter charges contain all elements of labor and materials, which directly produce a definite end, measured by cost or value."

Justice KEPHART follows this with the observation at page 415, "It is difficult to announce any rule of interpretation that will lay down a strict line of demarcation between the two charges, for there are many uncertain items fluctuating between the administrative and operative ends, partaking somewhat of both, which can be properly classified solely from a knowledge of the work done or the charge thereunder. This charge must be determined as each case presents its own peculiar circumstances."

In that case the term "overhead" was held *not* to include salaries of executives or administrative officials, interest charges for floating bonds, carrying charges, depreciation, taxes and general office expenses, but the opinion does state that, "The term 'time and material basis' was intended to include *the necessary cost of operation* affecting the particular undertaking, the cost of labor and materials that went into and became part of the finished product . . ."

Although the foregoing statement of exclusions under the term "overhead" mentions taxes, it does not specify what kind of taxes were intended. Immediately this raises the question whether social security taxes and unemployment taxes, part of which are deducted from the wages of the employe and paid by the employer for him, were intended to be included. Both of these taxes have reference to a particular employe and neither tax was payable in 1923, the date of the *Lytle* decision. Under the circumstances we would interpret that case to include taxes such as real estate, mercantile, corporate stock and loan taxes and not social security and unemployment taxes. However, that interpretation does not dispose of the question as to whether such taxes are part of labor costs or overhead expenses. Although the original contract in this case makes no specific mention of taxes, we note that the second contract does specifically provide that, "Cost shall include insurance and taxes on labor and material."

The same observation may be made in connection with the use of the word "insurance" as used in the *Lytle* opinion. Does it exclude such items from the cost of labor and place all insurance costs under the heading "overhead expenses" regardless of whether it is fire insurance on the business establishment of the contractor, insurance on the particular building being constructed by this owner or the material to be used therein, general liability insurance on the trucks and equipment of the contractor, or the particular liability insurance against claims arising because of the negligence of workmen on a particular job, or for injuries to those workmen? We do not interpret that decision as resolving this question.

Our reading of the written contracts lead us to no definite conclusion as to the intention of the parties on these disputed items, and we are reluctant to read in-

to the first contract the provision of the second contract referring to taxes and insurance as part of costs. Nevertheless, this does create an ambiguity which, together with those uncertainties previously set forth, require further evidence to determine the intention of the parties. The primary rule of construction of an agreement is that the intention of the parties is controlling, and where the intention is not clearly expressed, and there is doubt or ambiguity, resort may be had to the surrounding circumstances to ascertain the intention of the parties. *Kennedy v. Erkman*, 389 Pa. 651, 133 A. 2d 550 (1957).

Insofar as the cost of material is concerned, whether it should be charged at a price with or without discount, and if with discount whether storage, insurance and other charges should be added is not established definitely by the contract. Therefore, this also requires resort to surrounding circumstances. Certainly it would seem unreasonable to compel a contractor who has advanced money to buy material well in advance of his need for it to grant the benefits of such action to a future purchaser without reimbursement for at least incidental expenses required to carry it as inventory. Although the second *Lytle* case is not fully in point on this subject, it does indicate that the cost of the material, at least of the finished product, may include such items as delivery charges, etc., in addition to the other items going into the manufacture of the article, or in the alternative, that the market value of same may be adopted. However, we refrain from ruling on this item since the case must be retried, at which time the intention of the parties on this point may also be more clearly shown.

Since this appeal is limited to the disallowance of part of plaintiff's claim and has no reference to the judgment for the defendant on the counterclaim, the judgment in plaintiff's favor is reversed and a new

trial is awarded, the judgment of defendant on its counterclaim to be unaffected hereby except on the matter of costs which shall be determined by the outcome of the new trial. Should plaintiff's judgment at that time exceed that of the defendant, costs should be awarded to plaintiff, otherwise to defendant as heretofore entered.