Terry **SCHREFFLER, Petitioner,**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (KOCHER COAL
COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1999.
Decided Jan. 28, 2000.

Pellegrini, J., dissented.

**698**

Andrew Onwudinijo, Pottsville, for petitioner.

Michael F. Faherty, Harrisburg, for respondent.

Before DOYLE, President Judge, McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and FLAHERTY, J.

DOYLE, President Judge.

Terry Schreffler (Claimant) petitions this Court for review of an order of the

Workers' Compensation Appeal Board (Board) affirming the order of a Workers' Compensation Judge (WCJ) that dismissed his claim petition [1] as having been untimely filed under Section 315 of the Workers' Compensation Act (Act).[2]

The underlying facts, as found by the WCJ, are as follows. On November 5, 1979, Claimant, who worked for Kocher Coal Company (Employer) as a coal miner, sustained a work-related *back injury* and began receiving workers' compensation benefits pursuant to a Notice of Compensation Payable (NCP) filed by Employer.

However, sometime prior to his back injury, an accident occurred in one of Employer's mines culminating in a flood inside the mine where miners were working. Employer ordered Claimant and several other miners to go into the mine after the flood [3] waters receded to retrieve the bodies of co-workers who had drowned as the result of the flooding. Claimant described the events as follows in a colloquy with his attorney:

A  There was a flood. There were like 13—12 or 13 people killed.

. . .

Q  But where were they in relation to where you were?

A  Below me. We had to wait until the water went down to come down, and we come down the first thing we seen was some dead bodies. They took us over to get them out.

Q  Did you know these 13 people who were killed?

A  Yes, they were friends of mine.

---

1. Claimant initially commenced this action as a petition to review a notice of compensation payable. The petition was subsequently amended to a claim petition after the parties agreed that the current disability that Claimant was experiencing was unrelated to a prior injury for which Claimant was receiving compensation.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 602.

3. The record does not indicate the date of the flood.

. . .

Q What affect [sic] did this have on you, seeing your 13 friends killed like this?

A Just makes me—I don't like to talk about it, but it makes me feel—

Q Can you describe how it makes you feel?

A When you see them after one month—and the skin's falling off of them, the hair is falling out of them and stuff—they look like they were thrashed over completely. It just—I don't like to talk about it.

(Reproduced Record (R.R.) at 14–15.) Following this incident, Claimant testified that he began having nightmares and "reliving" the episode and, as a result, Claimant began to require psychological medical treatment. Although the previous NCP had only listed Claimant's November 5, 1979 back injury, in 1980, Employer began to pay for Claimant's psychiatric care as well.

In 1993, Employer's insurance carrier, Lackawanna Casualty Company, without advance notice, unilaterally stopped paying Claimant's psychiatric bills, and he filed a Petition to Review Notice of Compensation Payable on January 26, 1996. In his petition, Claimant alleged that he suffered overwhelming disability and trauma due to his experience over the death of his coworkers. This trauma, Claimant averred, required him to undergo psychiatric treatment for which Employer had initially paid, but then suddenly stopped. Employer filed a timely answer denying the allegations and raising the affirmative defense of the running of the statute of limitations contained in Section 315 of the Act, and hearings were held before a WCJ. The WCJ bifurcated the proceedings to examine, first, whether Claimant's petition was time barred, and then, if the claim was not time barred, the WCJ would reach the merits of the petition.

During the hearings before the WCJ, Claimant testified concerning his entrance into the mine following the flood and his resulting psychological problems. Although Claimant testified that Employer paid his medical bills for psychiatric treatment for 13 years following the incident, neither he nor Employer presented any evidence regarding what the payments were for, *i.e.*, whether the payments were for a psychological injury caused by his back injury or whether they were for a psychological injury independent of Claimant's back injury. Likewise, neither party presented any evidence establishing why Employer unilaterally stopped paying Claimant's medical bills.

On August 16, 1996, the WCJ issued a decision concluding that Claimant's petition was time barred under Section 315. Specifically, the WCJ concluded that the payment of the medical bills by Employer's insurer did not toll the running of the statute and that Employer and its insurance carrier would be severely prejudiced if the claim were allowed to proceed more than 15 years after the date of the alleged injury. Claimant appealed to the Board, which affirmed, and this appeal followed.

On appeal,[4] Claimant argues that his petition was not time barred because Employer voluntarily paid his psychiatric bills for thirteen years, and that these payments were "payments in lieu of compensation" under Section 315 of the Act which tolled the running of the statute. Therefore, his claim petition was timely filed.

■■■ The starting point of our analysis is Section 315 of the Act, which provides as follows:

In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under

4. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or wheth-

er an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. . . .

**Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition:** Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and *which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation,* and such payment shall not toll the running of the Statute of Limitations.

77 P.S. § 602 (emphasis added). We have previously held that Section 315 is a statute of repose. *Sharon Steel Corporation v. Workmen's Compensation Appeal Board (Myers),* 670 A.2d 1194 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 544 Pa. 679, 678 A.2d 368 (1996). Accordingly, unlike a statute of limitation which extinguishes the availability of a claimant's remedy, Section 315 extinguishes the claimant's right to benefits entirely. *Id.* Therefore, a claimant who files a claim petition more than three years after an injury bears the initial burden of establishing that his or her claim fits within an exception to Section 315. *Id.* It is important to note, however, that a claimant's mere establishment of the receipt of payments is not enough; rather, the important determination is what the payments were for. *NUS Corporation v. Workmen's Compensation Appeal Board (Garrison),* 119 Pa.Cmwlth. 385, 547 A.2d 806 (1988).

In the present case, the WCJ found the following facts, which are not challenged

on appeal. Employer sent Claimant down into its mine to retrieve the decomposing bodies of several of Employer's employees, some of whom were Claimant's friends. Following this incident, although he returned to work, Claimant began to experience nightmares and flashbacks to the flood and the removal of the bodies. As a result, he began to receive psychological treatment. Likewise, the parties agree that Claimant's nightmares and the need for psychological treatment are unrelated to his back injury. Finally, the parties agree that Employer paid Claimant's medical bills for psychiatric treatment for 13 years.

Based upon these facts, any reasonable mind would be compelled to conclude that Claimant conclusively established that the payments were intended in "lieu of compensation" for a psychological work-related injury, and we believe that Claimant created an inference that Employer made those payments for over 13 years to compensate him for that work-related injury.[5] We further believe that the burden was on Employer to come forward with any evidence that would demonstrate its intent in paying those bills, *i.e.,* evidence establishing that it was compensation for a non-work-related injury or that the payments were identified as *not* being workers' compensation. Section 315 clearly states that there is an affirmative burden to show that the payments in controversy are "identified as *not* being work[ers'] compensation." (Emphasis added.) If there is no evidence presented that the payments are *not* for a work-related injury, then they are deemed to be payments "in lieu of compensation." Moreover, evidence of intent is clearly more accessible to an employer than a claimant. Employer, however, offered no such evidence. Accordingly, we conclude

---

**5.** At oral argument, Employer's counsel disputed that the injury was work-related because Claimant's claim was untimely. This rationale is disingenuous because the timeliness of a claim petition is irrelevant to the classification of the underlying injury as work-related or non-work-related, and the classification of an injury as work related has no effect on the timeliness of a claim petition.

that the claim petition was timely, and the WCJ erred by dismissing it.

 Employer argues that the payment of medical bills, by itself, does not become an admission of an employer's liability for an injury and directs our attention to *Dennis v. E.J. Lavino & Co.*, 203 Pa.Super. 357, 201 A.2d 276 (1964), and *Bellefonte Area School District v. Workmen's Compensation Appeal Board (Morgan)*, 156 Pa.Cmwlth. 304, 627 A.2d 250 (1993), *aff'd*, 545 Pa. 70, 680 A.2d 823 (1994). We agree with Employer that, generally, the payment of medical bills, in and of itself, cannot toll the statute of limitations; however, in the present case, we are presented with a situation wherein Employer paid Claimant's psychiatric bills after his entrance into its mine at its direction to retrieve dead bodies of co-workers, many of whom had been Claimant's friends, for 13 years before abruptly stopping those payments. Accordingly, as noted above, Claimant presented clear and sufficient evidence to establish a presumption of why those payments were made, *i.e.*, for what injury, which Employer did not rebut or attempt to answer, and we hold therefore that the payments were in lieu of compensation under Section 315 of the Act, and that the statute of limitations was accordingly tolled by their payment.

### ORDER

NOW, January 28, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed, and the case is remanded to the Board with instructions to remand the case to a Workers' Compensation Judge for a hearing on the merits of the Claimant's claim petition.

Jurisdiction relinquished.

Judge PELLEGRINI dissents.

