788 A.2d 963

Terry SCHREFFLER,

v.

WORKERS' COMPENSATION APPEAL BOARD (KOCHER COAL COMPANY),

Appeal of Kocher Coal Company.

Supreme Court of Pennsylvania.

Argued April 30, 2001.

Decided Jan. 18, 2002.

530

Cynthia E. Banks, Scranton, Walter Frank Kawalec, III, Philadelphia, for Kocher Coal Company.

James A. Holzman, Harrisburg, Amber M. Kenger, Mechanicsburg, for Workers' Compensation Appeal Board.

Andrew C. V. Onwudinjo, Lester Krasno, Pottsville, for Terry Schreffler.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

***OPINION ANNOUNCING JUDGMENT OF THE COURT***

CAPPY, Justice.

We granted the petition for allowance of appeal to determine whether the Commonwealth Court erred in concluding that the claim petition of Appellee Terry Schreffler ("Claimant") was timely filed after his employer, Appellant Kocher Coal Company ("Employer"), voluntarily made payments for Claimant's medical expenses, thereby tolling the limitations period of section 315 of the Workers' Compensation Act ("Act"), 77 P.S. § 602. For the reasons set forth herein, we affirm the order of the Commonwealth Court, although on different grounds, and remand for further proceedings.

The facts, as set forth by the workers' compensation judge ("WCJ"), are as follows. In November 1979, Claimant sustained an injury to his back and was totally disabled. He began receiving workers' compensation benefits pursuant to a Notice of Compensation Payable ("NCP") filed by Employer. At an unspecified time prior to the back injury, a flood in one of Employer's mines killed a number of Claimant's co-workers. Claimant was part of the team that recovered the bodies of the drowned miners. Following this incident, Claimant began having nightmares and flashbacks, and as a result, he sought psychological care. Although the 1979 NCP only listed the back injury, Employer also began paying the medical bills for Claimant's psychological care.

In 1993, Employer's insurer stopped paying Claimant's bills for psychological treatment. On January 26, 1996, Claimant filed a "Petition to Review Notice of Compensation Payable", alleging that Claimant had experienced psychiatric and emotional problems, but erroneously attributing the psychological injury to the November 1979 incident. Employer filed an answer raising, *inter alia,* the defense of the three-year limitations period contained in section 315, a limitations period which may be tolled if payments of compensation were made "in lieu of workmen's compensation". 77 P.S. § 602.

Because the psychological injury had actually occurred prior to the back injury, and the parties agreed that the two injuries were unrelated, the WCJ treated the Review Petition as a Claim Petition. The WCJ bifurcated proceedings to determine first, whether the claim for the psychological injury was time-barred and if not time-barred, to consider the underlying merits. At the hearing on April 1, 1996, the only evidence presented was Claimant's testimony, which the WCJ assumed as fact for the limited purpose of determining the applicability of section 315. While characterizing Claimant's testimony as "vague regarding the [flood] incident" (WCJ Opin. at 5, ¶ 6), the WCJ made no specific credibility findings, nor was Employer given the opportunity to present any rebuttal evidence. The WCJ concluded that the claim petition was time-barred by section 315; that Claimant's estoppel theory failed; that

the payment of medical expenses did not toll the limitations period; and that Employer would be prejudiced if the claim proceeded after fifteen years of delay. WCJ Opin. at 7, ¶¶ 3–6.

The Workers' Compensation Appeal Board (WCAB) affirmed. WCAB found no reversible error in the WCJ's failure to specifically address whether payments of medical bills could constitute payments in lieu of workers' compensation for purposes of section 315, and thereby toll the limitations period, as Claimant failed to provide sufficient evidence to establish this claim. WCAB Opin. at 6. WCAB also rejected Claimant's argument that Employer was equitably estopped from denying liability for the injury. *Id.* at 9.

On appeal, the Commonwealth Court reversed. *Schreffler v. WCAB (Kocher Coal Co.),* 745 A.2d 697 (Pa.Cmwlth.Ct.2000) (*en banc*). The Commonwealth Court stated that certain facts were not challenged on appeal: Claimant was sent to retrieve the decomposing bodies of his co-workers; he returned to work and thereafter experienced nightmares and flashbacks to the flood, for which he began receiving psychological treatment; the nightmares and psychological treatment were unrelated to his back injury; and Employer paid Claimant's medical bills for psychiatric treatment for thirteen years. *Id.* at 700. Given these facts, the court found that "any reasonable mind would be compelled to conclude that Claimant conclusively established that the payments were intended in 'lieu of compensation'", and that "Claimant created an inference that Employer made those payments for over 13 years to compensate him for that work-related injury." *Id.* The court reasoned that the burden was on Employer to come forward with any evidence showing its intent in paying the bills. *Id.* Section 315 contained an affirmative burden to demonstrate that the payments were "identified as *not* being work[ers'] compensation" (emphasis in original). *Id.* Moreover, the court stated, evidence of intent was more accessible to the employer than to a claimant. *Id.* Since Employer failed to offer any such evidence, the court deemed the claim petition to be timely. *Id.* at 701. Consequently, the Commonwealth

Court reversed WCAB's order and remanded for proceedings on the underlying merits of the claim. *Id.*[1] Judge Pellegrini noted a dissent.[2]

The first issue we address is whether an employer's voluntary payment of medical expenses will toll the limitations period contained in section 315. That section states:

> In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article [Article III]; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.... Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition: Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations....

77 P.S. § 602.

This court has characterized section 315 as a statute of repose that entirely extinguishes a claimant's right to compensation benefits unless, within three years after the injury, the parties agree on the compensation payable under Article III or a claim petition is filed pursuant to Article IV. *Berwick*

---

1. The Commonwealth Court did not discuss the Claimant's estoppel argument, nor has Claimant raised it as an issue in a cross-appeal. Therefore, we do not discuss it.

2. Appellate review of a workers' compensation order is limited to determining whether constitutional rights have been violated, an error of law has occurred, rules of administrative procedure have been violated, or a finding of fact necessary to support the adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704; *Kmart Corp. v. WCAB (Fitzsimmons)*, 561 Pa.111, 748 A.2d 660, 661-62 (2000). As this appeal presents questions of law, our review is plenary. *Id.* at 662.

*Industries v. WCAB (Spaid),* 537 Pa.326, 643 A.2d 1066, 1067 & n.3 (1994). Claimant concedes that neither of those two options occurred in this case.

Claimant instead relies on the provision in section 315 whereby "payments of compensation" will toll the limitations period until the most recent payment. This court has defined the term "payment of compensation" to mean "an amount received and paid as compensation for injury or death of an employee, occurring in the course of employment." *Chase v. Emery Manufacturing Co.,* 271 Pa. 265, 113 A. 840, 841 (1921) (interpreting similar language in previous version of section 315). We further stated that "[i]t must clearly appear the amounts were so paid and received as compensation under the act, and not as wages for employment, and the disability or further disability must be attributable to an injury for which such compensation had been paid." *Id.* We recognized that section 315 was motivated by certain policy concerns. On the one hand, section 315 was designed to protect unwary employees, who, after having been being paid under a verbal agreement, may be caused to neglect presenting the agreement in a legal form. *Id.* On the other hand, employers should not be liable for faked or unlawful claims, or claims having no causal connection with an injury received in the course of employment, and therefore the statute includes the term "payment of compensation." *Id.*

We are now called upon to decide an issue not before us in *Chase, viz.,* whether voluntary payments of medical expenses qualify as "payments of compensation" such that the limitations period of section 315 is tolled. Employer urges us to hold that an employer's voluntary payment of medical expenses will not toll the limitations period in section 315. Employer maintains that this rule is supported by several important public policies: the benefit to the employee who receives prompt medical treatment; the appropriateness of limiting the time in which claimants must act; and the prevention of prejudice to the employer in defending against late claims. *See, e.g., Bailey v. WCAB (ABEX Corp.),* 717 A.2d 17 (Pa.Cmwlth.Ct.1998); *Bellefonte Area School District v.*

*WCAB (Morgan)*, 156 Pa.Cmwlth. 304, 627 A.2d 250 (1993), *aff'd*, 545 Pa. 70, 680 A.2d 823 (1994); *Dennis v. E.J. Lavino & Co.*, 203 Pa.Super. 357, 201 A.2d 276 (1964). Allowing voluntary medical expense payments to toll the limitations period permits an otherwise reposed claim to remain viable. Employer warns that such a rule would deter employers from making voluntary payments because they would risk continued and possibly unending liability. As a result, the workers' compensation system will become more costly and contentious, and less devoted to restoring the employee's health.

Claimant, in contrast, argues that the voluntary payment of medical expenses is sufficient to toll the limitations period of section 315, and that his claim petition was timely filed within three years of the date of the last payment. Claimant relies on the plain meaning of "compensation" as employed in the statute.

Both parties also cite this court's decision in *Berwick, supra*, in support of their positions. As we find that *Berwick* resolves this issue, we turn to a discussion of that case.

In *Berwick*, the claimant filed a claim petition for workers' compensation benefits outside of the three-year limitations period. Although the referee determined that the claim for weekly compensation benefits was barred, he also concluded that section 315 did not preclude the claim for medical expenses. WCAB and the Commonwealth Court affirmed.

On appeal, this court reversed, holding that the term "compensation" in section 315 may include medical expenses. *Id.* at 1069. We noted that the section establishing the employer's liability for compensation, section 301(a) of the Act, 77 P.S. § 431, included medical expenses as an item of compensation. We reasoned that it was only logical to interpret section 315, the section *extinguishing* the employer's liability, as being parallel to the section *establishing* the employer's liability, and therefore also to include medical expenses as an item of compensation. 643 A.2d at 1069. Consequently, we concluded that section 315 may bar a claim for medical expenses. *Id.* at 1070.

Employer argues that the court in *Berwick* rejected an interpretation of section 315 "that would place absolutely no time limitation on an employer's liability for medical expenses." *Id.* The court also recognized that limitations periods serve the important public policy of "promot[ing] repose by giving security and safety to human affairs." *Id.* (Citations omitted). Employer relies on this public policy in asserting that Claimant's petition is time-barred. We are not so persuaded, given other pertinent language in *Berwick.*

The *Berwick* court acknowledged that its interpretation of "compensation" contradicted *Paolis v. Tower Hill Connellsville Coke Co.*, 265 Pa. 291, 108 A. 638 (1919), which held that payments of medical expenses did *not* constitute compensation for purposes of the tolling provision of section 315. *Berwick,* 643 A.2d at 1069. We recognized that the *Paolis* rule had been praised as encouraging employers to pay medical expenses voluntarily, since under that rule they would not be penalized by the tolling of the limitations period for doing so. 643 A.2d at 1070 n. 6 (citing *Dennis, supra* ). However, we determined that the reasoning of *Paolis* no longer retained its original persuasiveness. 643 A.2d at 1069. The holding in *Paolis* essentially had been repudiated in the later case of *Staller v. Staller,* 343 Pa. 86, 21 A.2d 16 (1941), and the statutory language analyzed in *Paolis* had not been retained in subsequent amendments. 643 A.2d at 1069. As Claimant notes, we also rejected the *Paolis* rule because of the harsh result that followed: if an employer's payment of medical expenses did not toll the limitations period, then such payment "would allow an employee to be lulled into a false sense of security . . . without providing the employee with the 'window' of the tolling provision, thus taking away his claim for other compensation if not filed within three years after the injury." *Id.* at 1070 n. 6. It is evident, therefore, that the court rejected Employer's contention that encouraging voluntary payments by employers outweighs any countervailing consideration.

The logical corollary to *Berwick* 's holding that medical expense payments are "payments of compensation" which can be barred by the limitations period of section 315, is that

such payments are also "payments of compensation" for purposes of the tolling provision of section 315. While the Commonwealth Court in the instant case did not discuss the impact of *Berwick*, subsequent panels of the Commonwealth Court have done so, and have correctly determined that the payment of medical expenses could toll the limitations period of section 315. *See, e.g., Levine v. WCAB (Newell Corp. & Travelers Ins. Co.)*, 760 A.2d 1209 (Pa.Cmwlth.Ct.2000); *Golley v. WCAB (AAA Mid–Atlantic, Inc.)*, 747 A.2d 1253 (Pa. Cmwlth.Ct.2000). We have discovered that other tribunals have been confused about the impact of *Berwick*, and have followed *Paolis* as controlling precedent. We therefore take this opportunity to expressly overrule *Paolis*, and hold that payments of medical expenses can constitute "payments of compensation" for purposes of section 315 and will toll the limitations period in an appropriate case.

The next issue the litigants raise is which party has the burden of proving that the payments of medical expenses were "payments of compensation" for purposes of section 315. Employer contends that the claimant bears the burden of proof, and that the Commonwealth Court erroneously applied a shifting burden, whereby a claimant merely need assert a work-related cause for the injury in order for the burden to shift to the employer to disprove its intent to make the payments in lieu of workers' compensation. Employer argues that Claimant's evidence was of such poor quality that there is not much of a burden in the Commonwealth Court's test at all. Claimant agrees that a claimant initially carries the burden of proof. However, as an exception to this rule, Claimant asserts that the payment of medical expenses during a period of total disability following an alleged work-related injury should be sufficient to create an inference that such payments were intended to be in lieu of workers' compensation, and that such an inference arose in this case.

There is no dispute that the claim petition for Claimant's psychological injury was filed more than three years after the injury. The three-year limitations period in section 315 is a statute of repose which completely extinguishes the

right as well as the remedy of compensation benefits. *Berwick*, 643 A.2d at 1067 & n. 3. Thus, we hold that Claimant, who seeks the remedy of compensation benefits, bears the burden of establishing that his claim fits within an exception contained in section 315. *See Schiavo v. Workers' Compensation Appeal Board (Westinghouse Electric Corp.)*, 737 A.2d 832, 835 (Pa.Cmwlth.Ct.1999), *alloc. denied*, 561 Pa. 704, 751 A.2d 195 (2000).

We must decide what quantum of evidence is sufficient to meet this burden. Although we have never addressed this issue, the Commonwealth Court has developed significant case law in this area, which we find instructive. Those cases have established that the mere proof of the receipt of benefits is insufficient to meet the claimant's burden. *See, e.g., Roberts v. WCAB (Merck, Sharp & Dohme)*, 104 Pa.Cmwlth. 114, 521 A.2d 100, 101–02 , *alloc. denied*, 516 Pa. 620, 531 A.2d 1121 (1987); *WCAB (Potter Electric Co.) v. Kennedy*, 21 Pa. Cmwlth. 76, 342 A.2d 828, 830 (1975). Rather, the important inquiry is the intent with which the payments were made. *See NUS Corp. v. WCAB (Garrison)*, 119 Pa.Cmwlth. 385, 547 A.2d 806, 810 (1988). Thus, the claimant must adduce some additional evidence regarding the purpose of the payments, i.e., showing that the employer intended the payments to be in lieu of workers' compensation.[3] This additional evidence should, at a minimum, demonstrate that the employer either had actual or constructive knowledge of a work-related injury. *See Bergmeister v. WCAB (PMA Ins. Co.)*, 134 Pa.Cmwlth. 104, 578 A.2d 572 (1990), *aff'd and remanded*, 529 Pa. 1, 600 A.2d 531 (1991) (claimant immediately notified his supervisor that his physician recommended that he stop working because his illness was work-related, and employer agreed with claim-

---

**3.** Alternatively, Claimant proposes a standard based upon the viewpoint of a "reasonable person", i.e., what a reasonable person would think the payments were for. He contends that an inquiry into the employer's subjective intent serves no legitimate purpose of the Act. We find that the employer's intent is integral to the purpose of the payments. Lacking direct evidence of such intent, the evaluation may sometimes have to be determined from what a "reasonable person" would deduce from the evidence. But the employer's intent remains the polestar of the inquiry.

ant that to remain employed would be injurious to him; employer then began making payments to claimant).

However, as Claimant indicates, in the case of total disability, the intermediate appellate court has recognized the following exception to the above-stated rule: when payments of benefits are made to an employee who is totally disabled, a rebuttable presumption arises that the payments are in lieu of workers' compensation. *See, e.g., Bergmeister, supra; NUS, supra; Kennedy, supra.* While the Commonwealth Court developed this exception in the context of disability policy and wage payments, we think that it is equally applicable to payments for medical expenses.[1]

Once the claimant produces his or her evidence, either by presumption or otherwise, the employer may come forward with its own evidence to challenge the work-relatedness of the injury, or rebut the connection between the payments and the injury by demonstrating that the payments were "made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensa-

---

**4.** The Commonwealth Court has called this exception both an "inference" and "presumption". We recently articulated the difference between "permissive inferences" and "mandatory presumptions":

A permissive inference allows, but does not require, the factfinder to infer the elemental fact from proof of the basic fact and places no burden of persuasion or production on the defendant. In this situation, the basic fact may constitute "prima facie" evidence of the elemental fact. . . .

By contrast, a mandatory presumption tells the trier of fact that he must find the elemental fact upon proof of the basic fact. A mandatory presumption is either rebuttable or conclusive. A mandatory rebuttable presumption requires the factfinder to find the presumed element if the basic fact is proven, unless the defendant comes forward with some evidence to rebut the presumed connection between the two facts. Once the defendant satisfies this burden of production, the ultimate burden of persuasion returns to the prosecution.

*Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384, 389–90 (2000) (internal citations omitted). Although *MacPherson* discussed this tool in the context of a criminal statute, we find it instructive in defining the effect of the exception developed by the Commonwealth Court. Given prior Commonwealth Court precedent, we believe that the evidentiary tool is more properly designated a mandatory rebuttable presumption rather than an inference.

tion...." 77 P.S. § 602; *see Davis v. WCAB (Nat'l Fuel Gas)*, 117 Pa.Cmwlth. 320, 544 A.2d 535 (1988) (payments identified as not being workers' compensation where employer's benefits plan booklet indicated that sick pay disability benefits were received in addition to workers' compensation). Where the presumption applies, however, the employer must come forward with such evidence, or else the presumption is conclusive. *See MacPherson, supra.* If the employer produces such evidence, the burden of persuasion then returns to the claimant. *Id.*

Synthesizing these cases, the following standard emerges: in order to toll the limitations period of section 315, the claimant bears the burden of demonstrating that the payments of medical expenses were "payments of compensation". Claimant must therefore establish that (1) the injury was work-related, and (2) that the payments were made with the intent that they be "in lieu of workmen's compensation". The claimant cannot meet his or her burden by showing that payments of expenses have been made, but must adduce additional evidence as to the employer's intent in making the payments. The employer may rebut the claimant's evidence by demonstrating, for example, that the injury was not work-related, or that the payments were not made in lieu of workers' compensation. Where, however, an employer has made payments while the claimant was totally disabled as a result of a work-related injury, there arises a mandatory rebuttable presumption that the payments were in lieu of workers' compensation. In that situation, the employer *must* rebut the presumption or else the factfinder is required to determine that the payments were "in lieu of workmen's compensation" by the payment of the medical expenses alone. If the employer produces such evidence, the burden of persuasion returns to the claimant.

We are presented with an additional wrinkle in applying this standard to the instant case. Claimant argues that since he received payments from Employer during a period of total disability, the presumption applies, thereby allowing him

to meet his initial burden. Employer counters that the presumption cannot apply because Claimant is asserting distinct injuries, one of which was previously acknowledged while the other was not.

We agree that Claimant cannot employ the presumption in this case. When an employee has suffered a single, work-related injury and thereafter is totally disabled, it is logical to presume that an employer's medical expense payments were made in recognition of that injury. Here, however, there are, by Claimant's own admission, two discrete injuries occurring at separate times: the 1979 back injury, and the psychological injury which predated the back injury. Claimant continued to work between the time of the flood incident and his back injury (WCJ Opin. at 4, ¶ 4), and he testified that he sought psychiatric care upon the advice of the physician treating him for his back injury. N.T. 4/1/96 at 12. As Employer argues, while it is possible to conclude that the payments were made for both the back injury and the newly-claimed psychological injury, it is equally reasonable to conclude that they were made only for the previously-acknowledged back injury. Under these circumstances, we hold that the presumption cannot apply.

Finally, Employer contends that it should be given the opportunity to present its rebuttal evidence before the WCJ. As previously indicated, the WCJ assumed the truth of Claimant's testimony for the limited purpose of deciding the legal question of the applicability of section 315, without making any definitive credibility findings. WCAB affirmed, finding that Claimant had presented insufficient evidence to meet his burden, despite the lack of credibility findings. The Commonwealth Court reversed, concluding that Claimant established a presumption of the purpose of the medical payments, and that Employer, by failing to present any evidence, did not rebut or attempt to answer that presumption. However, it is patently clear that Employer was never permitted to present rebuttal evidence in light of the unique procedural scenario; indeed, the WCJ specifically preserved Employer's right to present

such evidence if the WCJ's order was reversed on appeal.[5] Thus, on remand, in light of the standard enunciated above, Claimant should be permitted to present any additional evidence in support of his claim, and Employer should be allowed to present its rebuttal evidence. Thereafter, the WCJ should make appropriate findings of fact and conclusions of law regarding whether Claimant has met his burden.

Accordingly, we affirm the Commonwealth Court's order which reversed the order of the WCAB, although we do so on different reasoning. The Commonwealth Court correctly determined that payments of medical expenses made "in lieu of workmen's compensation" may toll the limitations period of section 315, but erroneously found that Claimant's evidence was conclusive. We remand for proceedings consistent with this opinion. Jurisdiction is relinquished.

Former Chief Justice FLAHERTY did not participate in the decision of this matter.

Chief Justice ZAPPALA files a joining concurring opinion.

Justice NIGRO concurs in the result.

Justice SAYLOR files a dissenting opinion joined by Mr. Justice CASTILLE.

## CONCURRING OPINION

ZAPPALA, Chief Justice.

I join the Opinion Announcing the Judgment of the Court. I write separately, however, to note that it may prove difficult for a claimant to adduce direct evidence that the employer intended the payments for medical expenses to be "payments

---

5. The WCJ stated:
   4. [Sic] The purposes of determining whether this petition is barred by Section 315 of the Act all of the testimony referred to in this Finding No. 4 shall be considered as fact. If the Order below were to be reversed on appeal and this matter remanded, it is this WCJ's finding that, in view of the way this case was presented for decision ... that the [Employer] should then be permitted to present rebuttal evidence with respect to the testimony of the Claimant referred to in this Finding. No. 4.
   WCJ Opin. at 4, ¶ 4.

of compensation" for purposes of Section 315.   Thus, I merely emphasize, as recognized in footnote 3 on page 970 of the Opinion Announcing the Judgment of the court, that in some cases, the evaluation of the employer's intent may have to be determined from what a "reasonable person" would deduce from the evidence.   In summarizing its holding, the author goes on to state that "[t]he claimant cannot meet his or her burden by showing that payments of expenses have been made, but must adduce *additional* evidence as to the employer's intent in making the payments."   Slip Op. at 971 (emphasis added).   This latter statement should not be interpreted as inconsistent with the former for as to do so may render the claimant's burden an impossible one to overcome.

## DISSENTING OPINION

SAYLOR, Justice.

I agree with the opinion announcing the judgment of the Court that one seeking to file a claim petition for personal injury outside the three-year period of repose generally bears the burden of proving that the claim fits a statutory exception such as Section 315's "in lieu of compensation" tolling clause.   *See* 77 P.S. § 602.[1]   Further, I join the lead opinion in holding that this tolling provision may be triggered by the voluntary payment of medical expenses and, correspondingly, in overruling *Paolis v. Tower Hill Connellsville Coke Co.*, 265 Pa. 291, 108 A. 638 (1919).   I differ with the lead concerning the manner in which the applicability of the in lieu of compensation exception should be judged, and further, regarding the appropriate disposition of this appeal.

First, in selecting the legal principles appropriate to the resolution of the appeal, I believe that it is important to further clarify the procedure employed by the WCJ in dis-

1.   The Commonwealth Court has stated that a claimant may also avoid the effect of the three-year statute by proving, by clear and convincing evidence, that the actions of the employer or its insurance carrier lulled him into a false sense of security regarding the filing of the claim.   *See, e.g., Golley v. WCAB (AAA Mid-Atlantic, Inc.)*, 747 A.2d 1253, 1255 (Pa.Cmwlth.2000)(citing *Zafran v. WCAB (Empire Kosher Poultry, Inc.)*, 713 A.2d 698, 700 (Pa.Cmwlth.1998)).

missing the claim petition. As noted by the lead, the WCJ bifurcated the case to resolve the statute of repose issue as a threshold matter and also permitted only the Claimant to present evidence on such question. *See* R.R. at 52a–53a. The WCJ reasoned that, since it was undisputed that the petition on its face was barred by Section 315, it would be efficacious to test the legal sufficiency of the Claimant's contention that an exception (tolling) was implicated. In dismissing the claim petition, then, the WCJ effectively entered a nonsuit against Claimant, concluding that Claimant had failed to make out a *prima facie* case for tolling.

I recognize that the lead opinion's analysis proceeds from the manner in which the appeal has been framed by the parties addressing, as they do, shifting burdens and legal presumptions related to the effect of payment of medical expenses upon the Section 315 tolling inquiry. Nevertheless, given the character of the WCJ's decision as described above, I would not craft a disposition grounded in such concepts. Rather, I would evaluate the WCJ's ruling on its terms, namely, as one entailing a judgment that the Claimant presented insufficient evidence to proceed to the factfinding stage.[2]

**2.** While I do not necessarily disfavor use of a rebuttable presumption in the Section 315 context, I am not as certain as the majority that a distinction between cases involving total and partial disability would need to be drawn where the presumption is deemed to arise by virtue of the voluntary payment of medical expenses. As the lead opinion acknowledges, the line of Commonwealth Court decisions from which it draws the presumption concern disability policy and wage payments rather than medical expenses. It appears to me that the inference/presumption language was utilized in such cases because it is often difficult to distinguish whether payments to an employee reflect the employer's contractual obligation to provide compensation for continuing services rendered, or whether all or some component represents compensation for a work-related loss of earning capacity sustained. This problem is particularly troublesome in instances in which the employee remains working, for example, in a light duty capacity. *Compare Cotton v. John Wood Mfg. Co.*, 126 Pa.Super. 528, 531–32, 191 A. 189, 190 (1937)(holding that payments equivalent to wages made to an injured worker who returned to work in a light duty capacity but "couldn't do a capable day's work" were in lieu of compensation), *with Elkins v. Cambria Library Ass'n*, 82 Pa.Super. 144, 147–48 (1923)(finding that a claimant who returned to full employment in her time-of-

In this regard, one core component of the WCJ's ruling was that "payment of medical bills does not toll the statute of limitations." This prescription, however, was based upon the *Paolis* line of cases and therefore is entirely disposed of in the opening segment of the lead's discussion in which *Paolis* is expressly overruled. For this reason alone, the WCJ's decision to dismiss the claim petition cannot be sustained on its own terms. I believe, nonetheless, that it is also appropriate for the Court to evaluate whether the WCJ's decision to dismiss the claim petition based upon the failure to adduce sufficient evidence to implicate Section 315's "in lieu of payment" exception may be sustained for other reasons deriving from the record.[3]

Employer maintains that, even in a post-*Paolis* landscape, undisputed voluntariness associated with payment of medical expenses should defeat the characterization of such payments as in lieu of compensation and, correspondingly, any tolling effect. Significantly, however, the Commonwealth Court has frequently stated that "payment in lieu of compensation" means "any voluntary or informal compensation, apart from the Act, paid with the intent to compensate for a work-related injury." [1] Facially, this standard requires proof of only two

injury job presented insufficient evidence to support a conclusion that continuing payments represented anything other than wages). Where the payment at issue is of medical expenses and admittedly is made by the employer or its insurer on a voluntary basis, it is far less difficult to determine that such payments redress an injury-related loss, regardless of whether or not the employee remains working.

3. The focus of such further inquiry should be limited, however, to the sufficiency of Claimant's evidence, if believed, to create a legal controversy, since this is the framework in which the record was developed.

4. *Wallace v. WCAB (Pittsburgh Steelers)*, 722 A.2d 1168, 1170 (Pa.Cmwlth.1999)(quoting *Pittsburgh Steelers Sports, Inc. v. WCAB (Erenberg)*, 145 Pa.Cmwlth. 547, 552, 604 A.2d 319, 322 (1992)); *see also Bethlehem Steel Corp. v. WCAB (Gounaris)*, 714 A.2d 550, 551–52 n. 4 (Pa.Cmwlth.1998); *Toborkey v. WCAB (H.J.Heinz)*, 655 A.2d 636, 638 n. 3 (Pa.Cmwlth.1995); *Martin v. WCAB (United States Steel Corp.)*, 132 Pa.Cmwlth. 370, 377, 572 A.2d 1307, 1311 (1990); *NUS Corp. v. WCAB (Garrison)*, 119 Pa.Cmwlth. 385, 389, 547 A.2d 806, 809 (1988). These citations include decisions involving employer credit for loss compensation paid prior to the assertion of a claim and cases concerning the

elements: 1) actual payment of compensation, i.e., remuneration for a *type* of loss for which the Act would require recompense if the employer were to be found liable (for example, wage loss or medical expenses); and 2) an intent to redress such loss in relation to a specific work-related injury. The intent component does not contemplate the acknowledgment of actual liability or other similar element of involuntariness—indeed, the overall standard by its express terms contemplates instances of voluntary payments. As I believe that the above-quoted formulation provides an appropriate, workable standard consistent with the statutory framework, I would adopt it here and, correspondingly, reject Employer's assertion that the voluntariness of its payments should be viewed as negating the effect of Section 315's tolling clause. Indeed, I would recognize Employer's argument in this regard as merely a vestige of the *Paolis* rationale, which the Court has now expressly disavowed.

The only remaining inquiry which I would deem necessary to the disposition of the appeal is whether the record reflects sufficient evidence concerning Employer's intent, to warrant proceeding to factfinding on such question. In this regard, I agree with the lead's conclusion that a claimant bears the burden of proof by a preponderance of the evidence, and that the claimant's proof concerning intent should, at a minimum, demonstrate that the employer had actual or constructive knowledge of the particular work-related injury at issue. *See* Opinion Announcing the Judgment of the Court, *slip op.* at 970.[5] Further, against the background of this case, I believe that it would be appropriate to direct that such knowledge should also include awareness (actual or constructive) of the

tolling effect of Section 315, since payments in lieu of compensation are equally relevant in both contexts.

5. This conclusion suggests—correctly, in my view—that a showing of constructive knowledge of a work-related injury may, in some instances, substitute for a showing of actual knowledge, notwithstanding the lead's emphasis in the overall inquiry on the employer's subjective intent. *See* Opinion Announcing the Judgment of the Court, *slip op.* at 970 & n. 3.

specific work-related event that forms the basis of a claimant's assertion of work-relatedness.[6] Here, however, Claimant failed to present any evidence that he advised Employer of the asserted connection between his experience in the mining flood disaster and subsequent mental health treatment. Further, by not specifying on the record how much time had elapsed between the flood and his subsequent mental health treatment,[7] Claimant failed to establish a sufficiently close association to support an inference that the asserted connection should have been immediately apparent to Employer.[8] Therefore, Claimant's best case is to suggest that his testimony supports the inference that, in light of the magnitude of the flood event, and the physical character of Claimant's subsequent back injury, Employer on its own would have disregarded the temporal connection between the back injury and the

**6.** In the present case, it could be argued that Employer plainly had constructive knowledge of a mental health-related injury, since its insurer received and paid bills for mental health treatment. But in light of the Workers' Compensation Act's requirement of work-relatedness, and the differing standards governing relief which may apply depending upon the character of the causal factor, *compare Good Shepherd Workshop v. WCAB (Caffrey)*, 124 Pa.Cmwlth. 262, 267–69, 555 A.2d 1374, 1377–78 (1989)(describing the Commonwealth Court's prevailing standard for work-relatedness associated with physical injury caused by some discrete physical event), *with Davis v. WCAB (Swarthmore Borough )*, 561 Pa. 462, 473, 751 A.2d 168, 174 (2000)(elaborating upon the "abnormal working conditions" requirement pertaining to claims for "psychic injur[ies]"), it would seem appropriate to require a claimant to establish an employer's actual or constructive knowledge of the basis for the claim of work-relatedness as a component of his proofs on the intent question.

**7.** After the close of the record, the WCJ attempted to obtain a stipulation concerning the date of the flood event. Claimant's counsel reported that Claimant indicated that the event occurred in March of 1979; however, no stipulation to this effect appears as of record. Further, the WCJ's findings reflect uncertainty in this regard.

**8.** Notably, it appears from Claimant's testimony that the mental health treatment was ultimately initiated on the advice of the physician who treated Claimant for his back injury. *See* R.R. at 57a. This circumstance provides support for alternative inferences such as that advocated by Employer, namely, that its insurer received the invoices for mental health treatment contemporaneously with those pertaining to the acknowledged, work-related back injury, and therefore, Employer and its insurer failed to apprehend that the mental health treatment pertained to an entirely separate work event.

pertinent medical invoices, and instead, associated the psychological treatment with the flood event. The Commonwealth Court found such an inference to be compelling and, indeed, conclusive. *See Schreffler v. WCAB (Kocher Coal Co.)*, 745 A.2d 697, 700 (Pa.Cmwlth.2000). In my view, however, on this record such inference is simply too weak to support a claim of constructive notice (for purposes of the statutory tolling provision) that the treatment related to the flood event, since I believe that conclusions supported by alternative inferences, *see, e.g., supra* note 8, are at least equally as plausible.[9]

I would note, however, that Claimant also pursued an equitable estoppel theory before the WCJ and as the appellant before the WCAB and in the Commonwealth Court. *See supra* note 1.[10] The Commonwealth Court, however, did not address this equitable theory given its conclusion that the statutory tolling provision was implicated, and therefore, that the claim petition should proceed to a merits determination. Accordingly, and as I would overturn the Commonwealth Court's decision concerning statutory tolling, I believe that the appropriate course is to remand to the Commonwealth Court for consideration of Claimant's alternate, equitable theory.

Justice CASTILLE joins this dissenting opinion.

9. Like the lead, I would note that employers whose benefit plans compensate for non-occupational injuries ordinarily have the ability under the statute to prevent the tolling effect merely by designating the payments at issue as other than compensation. *See* 77 P.S. § 602 (providing, *inter alia*, that "any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the statute of limitations"). I support the Commonwealth Court's emphasis on this provision as a general matter, *see Schreffler*, 745 A.2d at 700; however, I find such emphasis inapplicable where, as here, the claimant fails to establish, at a minimum, sufficient actual or constructive notice to the employer of the specific work-related injury from which the medical bills arise.

10. Specifically, Claimant took the position that the payment for the mental health treatment by Employer's insurer for thirteen years without question lulled Claimant into a false sense of security.