872 A.2d 159

**JEANES HOSPITAL**

v.

**WORKERS' COMPENSATION APPEAL
BOARD (Shawn HASS)**

**Appeal of Shawn Hass.**

Supreme Court of Pennsylvania.

Argued May 12, 2004.

Decided April 14, 2005.

Jerry Michael Lehocky, Patricia Farrell Karelo, George E. Smith, III, Philadelphia, for Shawn Hass, appellant.

Lawrence R. Chaban, for PA Trial Lawyers Ass'n, appellant amicus curiae.

Amber Marie Kenger, Richard C. Lengler, Harrisburg, for W.C.A.B., appellee.

Leah-Beth Cilo, Philadelphia, for Jeanes Hosp., appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice NEWMAN.

This Court is called upon to decide the appropriate mechanism by which a workers' compensation claimant can institute proceedings to amend a Notice of Compensation Payable (NCP) to add additional injuries. In the instant matter, Shawn Hass (Appellant) was employed by Jeanes Hospital in Philadelphia (Employer) for about ten months as an intensive care nurse when, on August 31, 1995, she was injured while attempting to relocate a ventilator-dependent patient by means of a Hoyer lift.[1] The Employer accepted responsibility and she received benefits for total disability pursuant to an NCP, which described the work-related injury as "low back."

On July 19, 1999, nearly four years after the injury, Appellant was examined by Dr. Barry Lipson, a specialist in orthopedic surgery, at the request of Employer, following which Dr. Lipson certified Appellant's full recovery from her August 31, 1995 "lumbar strain and sprain". Employer filed a Petition to Suspend or Terminate Benefits on September 1, 1999, alleging that Appellant was fully recovered from her work-related injury as of August 23, 1999. Appellant then filed a Petition

---

1. A Hoyer lift is a brand name used to refer generically to a mechanical (hydraulic or electric) lift device that provides total lift to a patient and prevents injury during transfer. A sling is placed underneath the patient's body, which can be either manually or electrically elevated. This lift is used when a patient cannot provide any assistance in his or her transfer or when his or her body cannot be manipulated in a manual lift. A Hoyer lift transfer requires at least two people to assist in the transfer: one to operate the mechanical lift and the other to guide the patient, as in the instant matter, into the chair.

to Review Compensation Benefits on September 21, 1999, seeking attorneys fees and amendment of the description of the work related injury contained in the NCP. Appellant wished to amend the NCP to cover work-related shoulder injuries, fibromyalgia,[2] thoracic outlet syndrome [3], and depression.

A workers' compensation judge (WCJ) conducted hearings during which Appellant testified in support of her Petition and in opposition to that of Employer. Specifically, Appellant described the circumstances of the injury to her back and shoulder. She testified that she was attempting to move a ventilator-dependent patient by means of the Hoyer lift with the assistance of two other nurses. The lift caught on a chair and the patient began to slide. She stated that she caught the entire weight of the patient and held her until the two other nurses were able to properly position the chair. Appellant reported the incident to her supervisor and went directly to the emergency room complaining of back pain. The Business Health Department of Employer provided follow up treatment for the six months following the injury. Appellant stated that her shoulder began to hurt within two days of the incident, which she disclosed to the physicians in Business Health.

2. Fibromyalgia is a syndrome of unknown etiology characterized by chronic pain, both generalized and located at one or more identifiable "tender points." Other symptoms that frequently accompany this painful condition include depression, irritable bowel syndrome, tingling and numbness in the hands and feet, urinary frequency, and menstrual problems. Especially affected are the occiput, low back, neck, and shoulders. *The Merck Manual* 1369–70 (16th Ed. 1992).

3. According to the National Institute of Neurological Disorders and Stroke, " 'Thoracic outlet syndrome' consists of a group of distinct disorders that affect the nerves in the brachial plexus (nerves that pass into the arms from the neck) and various nerves and blood vessels between the base of the neck and axilla (armpit). For the most part, these disorders have very little in common except the site of occurrence. The disorders are complex, somewhat confusing, and poorly defined, each with various signs and symptoms of the upper limb." National Institute of Neurological Disorders and Stroke, Health Information, Disorders, Thoracic Outlet Syndrome at http://www.ninds.nih.gov/health_and_medical/disorders/thoracic_doc.htm (last visited August 3, 2004).

Subsequent treatment included initial conservative measures, instrumented spinal surgery performed by Dr. Richard Balderston in September of 1996, shoulder surgery by Dr. Gerald Williams (Dr. Williams) in January of 1996[4], further treatments by Dr. Carla Rodgers (Dr. Rodgers), a psychiatrist concentrating in pain management, beginning in April of 1998 and continuing to the date of the hearing, as well as treatments by a rheumatologist, Dr. Michael Franklin (Dr. Franklin), because the surgeries failed to alleviate her pain. Further, Dr. Williams diagnosed Appellant with Thoracic Outlet Syndrome in November of 1997. Appellant also described her unsuccessful, one-day, attempt to return to work for the same employer in October of 1995, her unsuccessful three-month return to work, and her continuing symptoms of pain, loss of mobility, and depression, which, in her view, prevented any return to work as a critical care nurse. She disclosed a previous work-related back injury in 1993 that had completely resolved and that, aside from irritable bowel syndrome and polycystic ovarian disease, she had been physically and emotionally healthy until this work accident. She also acknowledged prior psychiatric problems and two previous suicide attempts in her early adult years.

Dr. Rodgers, Appellant's psychiatrist, testified by deposition that her examination of Appellant included the administration of various psychological tests from which she concluded that Appellant continues to be disabled by "pain disorder with associated psychological and physical factors." (Deposition of Dr. Carla Rodgers dated March 20, 2000, at 13.) She elaborated that Appellant has chronic unremitting pain causing depression and feelings of being overwhelmed. *Id.* In the

4. Appellant's testimony apparently describes the shoulder operation incorrectly as "in January of 1995." (Notes of Testimony dated May 31, 2000 at page 22.) She later testified that the surgery occurred in January of 1996, prior to her back surgery in September of 1996. Because Appellant testified that she treated with Business Health for the first six months after the injury and did not seek outside treatment until after her care by Business Health ended, the timeframe gets a little murky. No records from Business Health were entered into evidence to enable us to corroborate the dates independently. However, Employer has not disputed this factual information, and we will accept it for purposes of this Opinion.

opinion of Dr. Rodgers, Appellant's medical prognosis is guarded at best and she remains totally disabled by psychiatric infirmities that are directly connected to the work-place injury in 1995. *Id.* at 16. Although Appellant sees more than one physician, Dr. Rodgers prescribes all of her pain medications and coordinates Appellant's pharmaceutical regimen to ensure that no contraindicated drugs are prescribed. On cross-examination, Dr. Rodgers conceded that she had reviewed few of the notes of Appellant's previous physicians, and was unaware of Appellant's previous suicide attempts.

Dr. Franklin, Appellant's rheumatologist, examined her on October 21, 1998, and concluded that she is disabled by fibromyalgia syndrome, a set of associated symptoms of unknown etiology including a recognized symmetrical distribution of locations on the body that produce pain when touched. He provided a detailed recitation of Appellant's medical history and conducted a battery of tests (both blood and muscle), thereby ruling out Thoracic Outlet Syndrome, autoimmune disorders, metabolic disorders, and thyroid problems. (Deposition of Dr. Michael Franklin dated April 26, 2000, at 16.) On physical examination, Dr. Franklin noted multiple tender points in the shoulder area, the lateral epicondyles outside the hips, the medial fat pads of the knees, and the bursa below the knee. Dr. Franklin thus concluded that Appellant is totally disabled by Fibromyalgia Syndrome and that her prognosis is poor to guarded. It was his opinion that Appellant's fibromyalgia is a direct result of her work-related shoulder injury.

Employer presented the expert testimony of its orthopedic specialist, Dr. Lipson, and psychiatric expert, Susan Fenichel, M.D. (Dr. Fenichel); the former opining that Appellant was fully recovered from her workplace injury and could return to her previous position without restrictions, and the latter that Appellant remained disabled by chronic pain and depression but that these conditions were not related to the work incident of August 1995. Dr. Lipson testified that Appellant's complaints of pain did not correlate with the results of his objective examination or diagnostic testing, and he opined that Appellant was being prescribed excessive amounts of narcot-

ics. Dr. Fenichel testified that Appellant suffered from no disabling psychiatric condition and required no further psychiatric treatment because of the work place injury. She also expressed concern as to the quantity of narcotics being prescribed for Appellant by Dr. Rodgers.

The WCJ credited the testimony of Appellant and Drs. Franklin and Rodgers. Specifically, he credited Appellant's testimony that she had injured her shoulder in the August 1995 work incident and that she had not fully recovered from her injury. He found the testimony of Dr. Franklin credible because Dr. Franklin had reviewed all of Appellant's medical records, had treated Appellant over time, and had credibly determined that Appellant suffered from fibromyalgia. The WCJ concluded that the testimony of Drs. Lipson and Fenichel was less credible, and determined that Appellant was not fully recovered as of August 23, 1999, from the fibromyalgia and "pain disorder with associated psychological and physical factors" sustained as a result of the August 1995 workplace injury. The WCJ decided that, based on the medical evidence, the NCP, in describing the injury solely as a "low back" injury, contained a material factual misstatement. The WCJ granted Appellant's Review Petition and ordered correction of the NCP to add the shoulder injury, fibromyalgia, and pain disorder with associated psychological and physical factors, denied Employer's Petition to Suspend or Terminate benefits, and rejected Appellant's demand for penalties.

On appeal to the Workers' Compensation Appeal Board (Board), Employer argued that Appellant had incorrectly filed a Petition to Review, rather than filing a Claim Petition. The Board acknowledged that the decision of the Commonwealth Court in *AT & T v. Workers' Compensation Appeal Bd. (Hernandez)*, 707 A.2d 649 n. 2 (Pa.Cmwlth.1998), required the filing of a Claim Petition to add additional injuries. However, it noted that the Commonwealth Court had also held that the "form of the petition is not controlling where the facts warrant relief to a claimant." *Coover v. Workmen's Compensation Appeal Bd. (Browning–Ferris Inds.)*, 140 Pa. Cmwlth.16, 591 A.2d 347, 350 (1991). Finding the credibility

determinations unassailable, and that substantial evidence supported the conclusions of the WCJ, the Board held that "the Judge correctly determined that [Appellant] met the burden of proof necessary to add the conditions to the Notice of Compensation Payable, regardless of the form of the petition filed." (Board Opinion dated January 10, 2002, at 6.)

Employer next argued that there was no evidence demonstrating that Appellant's work injury continues and that the WCJ erred in concluding that it had not met its burden of proof for termination. The Board noted that the WCJ specifically credited the opinions of Dr. Franklin and Dr. Rodgers, which supported the contention of Appellant that disability had not ceased. Because it was Employer's burden to prove that all disability had ceased, the credited evidence did not enable Employer to meet its burden. Accordingly, the Board affirmed the decision of the WCJ.

Employer appealed to the Commonwealth Court, which affirmed in part and reversed in part in a published decision. *Jeanes Hospital v. Workers' Compensation Appeal Bd. (Hass)*, 819 A.2d 131 (Pa.Cmwlth.2003). The court stated that, while a WCJ has the authority to amend an NCP when a material mistake occurs, the material mistake must exist at the time that the NCP is issued for Section 413 to apply. The court noted that none of the additional injures alleged by Appellant existed when the NCP was issued and there was no material mistake. It opined that, for injuries that arise subsequent to the work injury and that are not accepted by the employer in its NCP, Section 413 does not apply and a claimant must file a claim petition subject to the limitations of Section 315, 77 P.S. § 602.[5] The court reasoned that the only

---

5. Section 315 states in pertinent part:

In cases of personal injury all claims for compensation shall be forever barred, unless, within two years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within two years after the injury, one of the parties shall have filed a petition as provided in article four hereof. . . . Where, however, payments of compensation had been made in any case, said limitations shall not take effect until the expiration of two years from the time of making of the most recent payment prior to date of filing such petition. . . .

exception to this scheme is when the additional compensable injuries arise as a natural consequence of the accepted injury. *See Campbell v. Workers' Compensation Appeal Bd. (Antietam Valley Animal Hospital)*, 705 A.2d 503 (Pa.Cmwlth.1998).

The court went on to address the precept that the form of the petition is not controlling when a claimant is entitled to relief, which formed the basis for the Board's affirmance of the WCJ. It noted that its decision in *Coover* was interposed with concerns of prejudice where the claimant was unfairly blindsided when he expected to address one matter and the WCJ decided another. In *Coover*, the WCJ terminated a claimant's benefits based on the evidence presented, even though the employer had not sought termination before the close of the hearing process. The court reasoned that, even though the Act permits a WCJ to fashion appropriate relief, it was highly prejudicial to a claimant for a WCJ to terminate benefits where a claimant was unaware that benefit termination was an issue. The court observed that the unfair prejudice concern present in *Coover* was lacking in the instant matter where the Petition filed by Appellant adequately set forth the relief that she was seeking.

Finally, in the case at hand, the court reviewed the claim of Employer that the WCJ should have granted its Termination Petition. It recognized that the WCJ credited the testimony of Appellant that she continues to have low back pain and specifically rejected the testimony of Dr. Lipson that Appellant had fully recovered from her work injury. The court opined that, based particularly on these distinct factual findings, the WCJ believed that Appellant had not fully recovered and that she had sustained additional injuries. As such, there was no credible evidence to support a finding that all disability had ceased to sustain Employer's Termination Petition.

Appellant sought allowance of appeal asserting that: (1) the Commonwealth Court had deviated from this Court's holding in *Commercial Credit Claims v. Workers' Compensation Appeal Bd. (Lancaster)*, 556 Pa.325, 728 A.2d 902 (1999); (2) the

77 P.S. § 602.

court erred in determining that a claim petition must be filed to add additional injuries; and (3) if a claim petition was required, whether it was time barred. We granted her Petition, limited to the issue of whether the appropriate filing is a Claim Petition or a Petition to Review.

## DISCUSSION

It is fundamental to the sequence of events in a workers' compensation matter, that the process is initiated by injury to the employee and notice to the employer.[6] Like a flow chart, the path taken following this notice depends on whether voluntary acceptance of liability for the injury is assumed by the issuance of an NCP, or a Claim Petition is filed to adjudicate liability. The paths converge when liability is established, and the employee receives medical and wage loss benefits, as applicable, for the established and accepted injury. Problems arise, however, when the injured employee develops additional physical or psychological maladies, because an employer is responsible not only for the direct and immediate consequences of a work-related injury, but also for injuries that are causally related to the accepted work injury. 77 P.S. § 411.[7] The essence of this controversy is whether a claimant who develops a subsequent physical or psychological condition is required to file a Claim Petition seeking an adjudication that the condition is compensable or a Review Petition seeking to amend the NCP to reflect further injuries. The same

6. The record does not show that formal notice of the additional injuries was provided to the employer prior to the filing of the Petition to Review on September 21, 1999, particularly the advent of fibromyalgia and depression, although there is some evidence that Employer was made aware of Claimant's shoulder injury. However, Employer has not raised an issue of lack of notice and we will not pursue it. At the same time, we find the prevailing custom of delaying notification of additional injuries, such as the fibromyalgia and depression, until the employer files a Termination or Suspension Petition troubling.

7. Section 411 defines the covered events and states in pertinent part:
The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto....
77 P.S. 411(1).

dilemma is faced when the NCP does not reflect all of the injuries sustained by the claimant.

The Commonwealth Court has been less than consistent in addressing this issue. Beginning with *AT & T v. Workers' Compensation Appeal Bd. (Hernandez)*, 707 A.2d 649 (Pa. Cmwlth.1998), the Commonwealth Court determined that the only way to correct an NCP to add an injury, was to file a Claim Petition. There the court stated:

> We note that the [Act] makes no provision for a claimant to amend a notice of compensation payable to include an additional injury not admitted to by the employer at the time the employer initially issued the notice of compensation payable. A notice of compensation payable is not an agreement between the parties, but, rather, is a voluntary admission by the employer; in an effort to avoid litigation, the employer admits responsibility, and assumes liability, for the employee's injury as specifically described in the notice of compensation payable. Because there is no right to appeal from a notice of compensation denial, and because there exists no authority that would permit any entity other than the employer itself to add to the employer's admission in the notice of compensation payable, Claimant here should have filed a claim petition in order to receive benefits for the hip injury which he alleges also resulted from his April 8, 1989 work incident. We now take this opportunity to caution practitioners against the inappropriate filing made here....

*Id.* at 650 n. 2. In *AT & T*, Ruben Hernandez (Hernandez) sustained a work-related injury when a cabinet full of computers fell on his hip and side, pinning him to the floor. The employer accepted liability for a "back sprain" and Hernandez collected benefits for a little over three months. During this timeframe, Hernandez developed bilateral aseptic necrosis of his hips. The employer then filed a Termination Petition alleging that Hernandez had recovered from his "back strain" and could return to work except for his non-work-related aseptic necrosis. Hernandez filed a Petition to Review, seeking to amend the incomplete description of the work injury

contained in the NCP. The Commonwealth Court permitted the amendment and treated the filing as a claim petition because the employer failed to challenge the legitimacy of the Petition to Review. In doing so, the court cautioned future claimants that filing a claim petition was the appropriate action when seeking benefits for conditions other than those delineated in the NCP.

The following year, this Court decided *Commercial Credit Claims v. Workmen's Compensation Appeal Bd. (Lancaster)*, 556 Pa.325, 728 A.2d 902 (1999).[8] There, an employee fell twenty-eight feet from a catwalk while taking photographs in his occupation as a claims adjuster. The employer accepted liability for the physical injuries and, three years later, sought to terminate benefits because of full recovery. In opposition, the employee testified that he continued to experience pain. The employer's medical expert stated that the original injuries could not justify the continued level of pain as expressed by the employee, and that, in his opinion, the cause of the continuing pain was psychological. The WCJ concluded that, because the employer's medical expert could not rule out a connection between the work injury and the disabling psychological condition, the employer was not entitled to a termination of benefits. The Board and the Commonwealth Court affirmed.

This Court granted allowance of appeal in that case to determine whether an employer attempting to terminate workers' compensation benefits must disprove a causal relationship between the injury and the subsequently alleged psychiatric overlay where the employer had accepted liability only for physical injuries. After reviewing the modification procedures provided by the Act, the Court determined that the psychiatric overlay could form the basis for continued benefits only if the NCP had been properly modified. We noted that either party may file a Petition to Modify pursuant

---

**8.** The work injury in *Commercial Credit Claims* occurred in 1983. The WCJ stayed the proceedings because of the employee's illness and the matter was not resumed until approximately 1995. As a result, sixteen years elapsed between the date of the work injury and the decision of this Court.

to Section 413(a) of the Act, and the party so moving has the burden of proving the grounds for modification. In *dicta*, the Court observed that the claimant was not without a remedy as he could file a Petition to Modify the NCP to add the additional injury. In effect, our decision in *Commercial Credit Claims* disapproved of the concepts expressed by the Commonwealth Court in footnote two of *AT & T*. Subsequently, the court followed *Commercial Credit Claims* in such cases as *Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Bd. (Korach)*, 829 A.2d 387 (Pa.Cmwlth.2003), and *Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Bd. (Burger)*, 838 A.2d 831 (Pa.Cmwlth.2003), yet *AT & T* in the instant matter, prompting our review.

Appellate review in workers' compensation matters is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the practices and procedures of a Commonwealth agency were followed, and whether the findings of fact made by the WCJ and necessary to support its decision were supported by substantial evidence. 2 Pa.C.S. § 704; *Gunter v. Workers' Compensation Appeal Bd. (City of Philadelphia)*, 573 Pa.386, 825 A.2d 1236, 1238 (2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines v. Workmen's Compensation Appeal Bd. (Skirpan)*, 531 Pa.287, 612 A.2d 434, 436 (1992). Because this appeal raises questions of law, our standard of review is plenary. *Rossa v. Workers' Compensation Appeal Bd. (City of Philadelphia)*, 576 Pa.349, 839 A.2d 256, (2003).

 Modification of the NCP to reflect further injuries is governed by Section 413(a) of the Workers' Compensation Act (Act).[9] Section 413(a) of the Act reads in pertinent part:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable

9. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2502–2626. Section 413(a) has been divided by Purdon's Pennsylvania Consolidated Statutes Annotated into three separate sections, 77 P.S. §§ 771, 772, and 773, representing each of the three paragraphs contained in the actual Section 413(a).

... or upon petition filed by either party with the depart-
ment, or in the course of the proceedings under any petition
pending before such workers' compensation judge, if it be
proved that such notice of compensation payable or agree-
ment was *in any material respect incorrect.* (77 P.S.
§ 771.)

A workers' compensation judge designated by the depart-
ment may, at any time, modify, reinstate, suspend, or
terminate a notice of compensation payable ... upon peti-
tion filed by either party with the department, upon proof
that the *disability of an injured employe has increased,
decreased, recurred, or has temporarily or finally ceased*
.... Such modification, reinstatement, suspension, or termi-
nation shall be made as of the date upon which it is shown
that the disability of the injured employe has increased,
decreased, recurred, or has temporarily or finally ceased
... Provided, That, except in the case of eye injuries, no
notice of compensation payable, agreement or award shall
be reviewed, or modified, or reinstated, unless a petition is
filed with the department within three years after the date
of the most recent payment of compensation made prior to
the filing of such petition.... And provided further, That
where compensation has been suspended because the em-
ploye's earnings are equal to or in excess of his wages prior
to the injury that payments under the agreement or award
may be resumed at any time during the period for which
compensation for partial disability is payable, unless it be
shown that the loss in earnings does not result from the
disability due to the injury. (77 P.S. § 772.)

The workers' compensation judge to whom any such petition
has been assigned may subpoena witnesses, hear evidence,
make findings of fact, and award or disallow compensation,
*in the same manner and with the same effect* and subject to
the same right of appeal, as if such petition were an *original
claim petition.* (77 P.S. § 773.)

77 P.S. §§ 771, 772, 773 (emphasis added). The import of
these paragraphs is clear. The WCJ may amend an NCP if it
is materially incorrect or if the disability status of the injured

employee has changed. An NCP is materially incorrect if the accepted injury (or injuries) does not reflect all of the injuries sustained in the initial work incident. Conversely, and also covered by Section 413(a), injuries that result or flow from the original injury, represent an increase in disability.[10]

The often overlooked third paragraph of Section 413(a) requires that petitions filed pursuant to this section be treated the same "as if such petition were an original claim petition." 77 P.S. § 773. It is, therefore, unnecessary, as the Commonwealth Court held, for a claimant to file a new claim petition for additional injuries not accepted by the employer, because the WCJ is empowered to and must treat a modification petition alleging those additional injuries as if it were a claim petition. Stated another way, a Petition to Modify an NCP functions as a claim petition for the purpose of adding additional injuries. Because it functions "in the same manner and with the same effect," the burdens of proof for the respective parties are the same as if an actual claim petition had been filed. This provision is critical because the employer has not heretofore accepted liability voluntarily for the additional injury. Despite the concept espoused in *AT & T*, and followed in the instant matter, that the Act provides no mechanism for amending an NCP, Section 413(a) establishes the limits of authority for amendment by the WCJ and the burdens of the respective parties.

With the foregoing in mind, we turn to the specifics of the matter under review. Having established that the appropriate filing to seek a modification of the NCP to correct the description of the work injury is a Petition to Review, we note that Appellant made the correct filing. The Petition alleges a material mistake of fact in that "The NCP fails to reflect claimant's work-related shoulder injuries, fibromyalgia, Thoracic Outlet Syndrome and depression." (Original Record,

10. Within the workers' compensation scheme, disability is the loss of earning power as expressed in diminished earning capacity. *Woodward v. Pittsburgh Engineering & Construction Co.*, 293 Pa. 338, 143 A. 21 (1928). An increase in the extent or severity of the injuries increases the length of impairment that will be reflected in an overall reduction in earnings and, therefore, the increase, decrease, recurrence, or cessation of the injury has a direct impact on earning capacity, viz. disability.

Petition to Review dated September 21, 1999, side 1.) The burden belonged to Appellant to satisfy her burden that there was a material mistake as to the work injury description. To that end, Appellant testified that she injured her shoulder during the same incident and sought treatment within two days of the injury. The record also reflects that Dr. Williams treated Appellant conservatively with physical therapy and site injections before performing surgery five months after the injury. The WCJ found the testimony of Appellant completely credible and sufficient evidence supports the conclusion of the WCJ that the NCP was materially incorrect when it was issued and subject to modification to add the shoulder injury.

Dr. Franklin, who is currently treating Appellant, testified that he diagnosed fibromyalgia based on his examination, her medical history, and her symptomology in October of 1998. The WCJ credited this testimony, which was unequivocal. Employer argues that the NCP could not have been materially incorrect at the time it was issued for failing to include this condition because Appellant's fibromyalgia developed some time after the initial incident. While Employer is correct, Section 413(a) permits the WCJ to modify an NCP whenever it is shown that disability increased. Appellant's increasing levels of pain as evidenced by the difficulty that Dr. Rodgers and Dr. Franklin have experienced in finding a treatment regimen that will restore her quality of life, make reinstatement of Appellant's earning capacity less than likely. Further, Dr. Franklin's credible testimony established that Appellant's fibromyalgia flowed directly from her work-related shoulder injury. We see no error in modifying the NCP to include fibromyalgia.

Appellant sought to modify the NCP to add coverage for Thoracic Outlet Syndrome. Notably, the WCJ made no findings as to whether Appellant satisfied her burden of proving this condition. However, the WCJ did not include this condition in the modification and Appellant has not cross-appealed this determination.[11]

11. Our review of the record discloses that Appellant produced no expert medical testimony that she suffered from Thoracic Outlet Syndrome.

Finally, Appellant sought to have the NCP reflect the depressive state that has developed as a result of, and is now a part of, the work injury. Both Dr. Rodgers and Dr. Fenischel testified that Appellant was depressed; the difference was in the degree. The WCJ credited the testimony of Dr. Rodgers, which was sufficient to undergird the conclusion of the WCJ that Appellant's depression was a direct result of the work injury. Further, Appellant testified that she was depressed because she could not return to work as a critical care nurse.

Based on the foregoing, we find that the WCJ properly amended the NCP to add Appellant's shoulder injury, fibromyalgia, and psychiatric overlay.

## CONCLUSION

Within the workers' compensation scheme, we have recognized a number of important public policies. Among those are the positives attendant to the voluntary payment of medical expenses, the appropriateness and desirability of limiting, through statutes of limitations and repose, the time during which claimants must act, and the humanitarian goals that are realized when the system works as intended.

When an NCP description of injury does not correctly reflect the actual injury or enumerate all of the injuries sustained in a work-related incident, Section 413(a) sets forth the procedure by which the NCP is modified. Pursuant to Section 413(a), a claimant must file a Petition to Review Notice of Compensation Payable, which is treated like a claim petition. As in a claim petition, the claimant has the burden of proving all elements to support the claim for benefits. In the instant matter, Appellant filed a Petition to Review Notice of Compensation Payable and sustained her burden of demonstrating a material misstatement of fact.

Accordingly, the Order of the Commonwealth Court is reversed.

Justice BAER concurs in the result.

Justice EAKIN files a dissenting opinion.

Justice EAKIN dissenting.

We accepted review of this case to determine whether a claim petition or review petition is the proper filing to add injuries that arise subsequent to the original injury. Unlike the majority, I do not believe a claimant may merely file an amendatory review petition in order to receive benefits for injuries not included in the original NCP. Unless these arise as a natural consequence of the original injury, I believe the law requires filing of a new claim petition for injuries not accepted by the employer in the original NCP. *See AT & T v. Workers' Compensation Appeal Bd. (Hernandez),* 707 A.2d 649, 650 n. 2 (Pa.Cmwlth.1998) (claim petition must be filed when seeking benefits for additional injuries).[1]

Pursuant to § 413(a) of the Workers' Compensation Act, a WCJ may only amend the NCP when it is materially incorrect or when an employee's disability has increased. *See* 77 P.S. § 771–772; *Westinghouse Elec. Corp./CBS v. Workers' Compensation Appeal Bd. (Burger),* 838 A.2d 831, 837 (Pa.Cmwlth. 2003) ("Section 413(a) of the Act requires the moving party to prove that a disability has 'increased,' and to prove the causal relationship between the original injury and the amending disability."). Here, no material mistake of fact existed; claimant's shoulder injury, fibromyalgia, and depression were not claimed at the time the NCP was issued, and they are not "increases" of the claimed injury. As the employer did not (indeed, could not) acquiesce to liability for these unclaimed ailments, there was no mistake in excluding them. Any "mistake" lies in claimant's failure to mention them until years later when employer alleged an end to the only injury of which it had notice.

Requiring a claim petition allows the procedure contemplated by the statute to take place, with full and timely attention to the claim. This also prevents the unfair result here—

---

1. The exception announced in *Campbell v. Workers' Compensation Appeal Bd. (Antietam Valley Animal Hospital),* 705 A.2d 503, 507 (Pa. Cmwlth.1998), is inapplicable where there was no indication that the subsequent injuries arose as a natural consequence of the original injury.

employer had no notice of these claimed injuries until years after the fact, yet must address them as mere "amendments" claimed only upon cessation of the original injury. Requiring a claimant to give notice to the employer within two years of these additional injuries is explicitly called for by the statute, for reasons of fundamental fairness. This basic requirement is hardly onerous to claimant. Allowing new claims for a different, long-standing injury is not a mere modification. Claimant was not alleging her original low-back disability had increased, and the subsequent injuries were not a natural consequence of the low back disability; accordingly, the WCJ had no authority to amend the NCP.

Therefore, I am compelled to dissent.