Raymond SEEKFORD, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (R.P.M. ERECTORS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted July 7, 2006.

Decided Oct. 11, 2006.

Michael E. Flaherty, Pittsburgh, for petitioner.

Richard D. Hollingworth, York, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Raymond Seekford (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied Claimant workers' compensation benefits for a specific loss injury under the Pennsylvania Workers' Compensation Act (Act).[1] In doing so, the Board reversed the decision of a Workers' Compensation Judge (WCJ) and found that Claimant's claim was time-barred because he failed to file a review petition within three years of payment of a commutation award for the original injury. We affirm the Board.

Claimant was employed as an iron worker on July 27, 1994, for R.P.M. Erectors (Employer) when he slipped and fell while carrying a 200-pound steel panel. Claimant began receiving workers' compensation total disability benefits for an injury to the "lower back and thigh" pursuant to a Notice of Compensation Payable (NCP) issued on August 19, 1994.[2] Claimant un-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

2. United Dominion Industries, Inc. is listed as employer on the NCP. Employers' counsel stated at the hearing on July 2, 2002, that RPM Erectors was a subsidiary of United Dominion Industries, Inc., at the time of

derwent back surgery on December 29, 1994. Upon awakening from this surgical procedure, Claimant realized that he suffered both weakness in and loss of control of his right arm. This condition was later attributed to nerve damage resulting from inadequate padding of his upper extremities during surgery. Claimant did not return to work.

Thereafter, Claimant petitioned the Board to commute his workers' compensation benefits and in support filed his stipulation with Employer that as of July 10, 1996, Claimant's work-related injury had resolved into a permanent partial disability. Stipulation, July 10, 1996, at 2. The parties further stipulated that Claimant was "capable of achieving a permanent partial disability weekly earning power of at least $417.01 ... and that he [was] entitled to workers' compensation partial disability benefits at the weekly rate of $262.50 per week." *Id.* The Board granted Claimant's petition and ordered Employer to pay the commuted sum of $131,250 for 500 weeks of partial disability benefits, less $6,250 in attorney's fees.[3] Claimant received a check for $125,000 on July 15, 1996. The Board further ordered that Employer remain responsible for Claimant's reasonable and necessary medical expenses related to the July 27, 1994, work injury. The last medical expense paid by

Employer was for an examination of Claimant by his treating physician, Richard Bonfiglio, M.D., on September 7, 2000.

On May 16, 2002, Claimant filed a claim petition, asserting the loss of use of his right arm as a result of complications of the December 1994 surgery. Claimant requested specific loss benefits for 410 weeks and for a healing period of 20 weeks as provided for in Section 306(c,d) of the Act, 77 P.S. § 513.[4] In its answer, Employer admitted Claimant sustained a compensable right arm injury, but contended that since his initial benefits were commuted in 1996, his claim was time barred by the three-year statute of limitations in Section 413(a) of the Act, 77 P.S. § 772. The matter was assigned to a WCJ, and hearings ensued.

At the first day of hearing Claimant amended his claim petition to add a request for modification of the NCP to include the specific loss of his right arm. The motion was granted.

Regarding the loss of use of his right arm and hand, Claimant offered his own testimony as well as that of his fiancée. Claimant also offered the deposition testimony of Dr. Bonfiglio, who testified that Claimant exhibited markedly impaired function of his right hand and arm during examinations on December 14, 2000, and

---

Claimant's injury. The name RPM Erectors was later changed to RPM Constructors.

3. Section 306(b) of the Act provides for a maximum compensation period of five hundred weeks. 77 P.S. § 512.

4. Section 306(c), (d) of the Act provides in relevant part:
   For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
   * * *
   (3) For the loss of an arm, sixty-six and two-thirds per centum of wages during four hundred ten weeks.

* * *
   (25) In addition to the payments hereinbefore provided for permanent injuries of the classes specified, any period of disability necessary and required as a healing period shall be compensated in accordance with the provisions of this subsection. The healing period shall end (i) when the claimant returns to employment without impairment in earnings, or (ii) on the last day of the period specified in the following table, whichever is the earlier:
   * * *
   For the loss of an arm, twenty weeks.
   77 P.S. § 513(3), (25).

July 11, 2002. Dr. Bonfiglio opined that Claimant's condition was permanent and the direct result of the back surgery on December 29, 1994.

Employer's medical expert, John Talbott, M.D., testified regarding his examination of Claimant on October 8, 2002. Dr. Talbott observed that Claimant moved his upper arm, lower arm and hand without impairment and had good strength of the right pectoral muscle groups, biceps and triceps. Dr. Talbott opined that Claimant did not lose the use of his right upper extremity for all practical intents and purposes; he attributed Claimant's complaints to diabetes.

The WCJ credited the testimony of Dr. Bonfiglio over that of Dr. Talbott. The WCJ also credited Claimant's testimony, as well as that of his fiancée, regarding the limited use of his arm. The WCJ concluded that Claimant's claim petition was not time-barred because the date of injury for purposes of the statute of limitations was December 2, 2002, when Claimant learned from Dr. Bonfiglio that the loss of use of his right arm was permanent and job-related. Finding that Claimant met his burden of proving that his arm injury resulted from the original work injury, the WCJ granted Claimant's claim petition and awarded him 410 weeks of compensation benefits for specific loss plus 20 weeks of benefits for a healing period. The WCJ awarded Employer credit for its prior payment to Claimant of the commuted sum of $131,250. Employer appealed to the Board.

■ The Board reversed the decision of the WCJ, reasoning that Claimant sought to amend the NCP to include a specific loss that was the direct result of the accepted work injury. Accordingly, Claimant was required to file a review petition as provided in Section 413(a) of the Act, 77 P.S. § 772,[5] and as directed by the Pennsylvania Supreme Court in *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005). Treating the claim petition as a review petition, the Board applied the limitation in Section 413(a) that "no notice of compensation payable ... shall be reviewed, modified, or reinstated, unless a petition is filed ... within three years after the date of the most recent payment of compensation." 77 P.S. § 772. Because Claimant filed the review petition on May 20, 2002, nearly six years after his last payment of compensation on July 15, 1996, the Board held that Claimant's attempt to amend the NCP was time-barred. Claimant now petitions this Court to review the Board's decision.[6]

5. Section 413(a) of the Act provides, in pertinent part, as follows:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termi-

nation shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed.

77 P.S. 772.

6. Our standard of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation)*, 539 Pa. 333, 338, 652 A.2d 802, 805 (1995).

On appeal, Claimant presents four issues for our consideration. First, Claimant argues that the Board erred by treating his petition for specific loss benefits as a review petition, subject to Section 413(a) of the Act, 77 P.S. § 772, instead of as a claim petition subject to Section 315 of the Act, 77 P.S. § 602. Second, Claimant asserts that his claim petition was timely filed under Section 315 of the Act. Third, Claimant argues, alternatively, that the discovery rule tolled the three year statute of limitations in Section 413(a) until April 25, 2002, when he first learned that the loss of his arm was total, permanent and work-related. Fourth, Claimant contends that he was entitled to file a claim for specific loss benefits within 500 weeks from the date his benefits were suspended.

■ We consider, first, Claimant's contention that the Board erred by treating his petition for specific loss benefits as a review petition governed by Section 413(a) of the Act, 77 P.S. § 772, including its three-year statute of limitations. In advancing this argument, Claimant contends that permanent injuries qualifying for specific loss benefits are treated separately and distinctly from the original work injury. Claimant reasons that he suffered two distinct work-related injuries: the original injury to his back and leg on July 27, 1994, and a second, separate injury to his arm on December 29, 1994, during surgery to treat the original work injury. Claimant argues that, with respect to his arm injury, his claim petition for specific loss benefits was the appropriate filing and, as such, governed by the statute of repose in Section 315 of the Act. We disagree.

Our Supreme Court recently addressed a similar issue in *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Korach)*, 584 Pa. 411, 883 A.2d 579 (2005). In *Westinghouse*, the claimant sustained a work-related injury in the nature of a "back sprain" and began receiving disability benefits pursuant to an NCP. Five years later, the claimant and his employer entered into a supplemental agreement reducing his benefits to partial disability and then commuting them to a lump sum payment of $77,000. Westinghouse remained liable for claimant's medical expenses. Although Westinghouse paid for claimant's psychiatric care from 1989 to 1998, it ceased doing so when an internal review discovered that a psychiatric injury was not included in the NCP. Claimant filed a claim petition in 1998, alleging that his 1984 back injury had precipitated a psychiatric injury. Westinghouse answered by asserting that the claim petition should be treated as a petition to review the NCP, and that it was time-barred under both Sections 315 and 413 of the Act.

On appeal, the Supreme Court explained the critical distinction between the statute of repose in Section 315, which acts to bar the filing of a new claim, and the statute of limitations in Section 413(a), which acts to bar amendments to previously filed claims. Reiterating its holding in *Jeanes Hospital*, the Court

> dispelled the notion that a claim petition must be filed in order to add further injuries to an NCP, either arising at the time of the work-related incident *or flowing from the recognized work-related injury.* ... *Section 413(a) of the Act provides the appropriate procedure to amend an NCP to add related injuries.*

*Id.* at 427, 883 A.2d at 589 (emphasis added). The Court concluded that the filing of a claim petition pursuant to Section 315 was erroneous because the claimant was alleging that his psychiatric condition arose as a direct result of his work-related back injury.

■ In the case *sub judice,* Claimant claims a specific loss of his arm that resulted from a surgical procedure to treat a

previous work-related injury to his back. We reject Claimant's attempt to characterize these as separate and distinct injuries.[7] It is well established that where medical treatment for a work injury aggravates the existing disability or causes a *new or additional injury*, the injury is deemed to have been caused by the original work injury. *Workmen's Compensation Appeal Board v. Ira Berger & Sons*, 470 Pa. 239, 368 A.2d 282 (1977). *See also Snyder v. Pocono Medical Center*, 547 Pa. 415, 690 A.2d 1152 (1997) (employer has continuing liability for injuries resulting from treatment of work-related injury even in cases of mistaken diagnosis, unnecessary operations and negligent treatment). Thus, the Board properly treated Claimant's claim petition as a review petition, subject to Section 413(a) of the Act.[8]

We turn, next, to Claimant's third issue, offered as an alternative argument in the event of a ruling by this Court that Section 413(a) governs his petition for specific loss benefits. Claimant argues that the three-year statute of limitations in Section 413(a)[9] was tolled by operation of the discovery rule. The tolling event, according to Claimant, was the issuance of Dr. Bonfiglio's medical report on April 25, 2002,[10] informing Claimant that he had lost the use of his right arm for all intents and purposes. In advancing this argument, Claimant relies upon prior decisions of this Court that addressed claims for specific loss of eyesight and hearing. *See, e.g., Roadway Express, Inc. v. Workers' Compensation Appeal Board (Siekierka)*, 708 A.2d 132 (Pa.Cmwlth.1998) (loss of eyesight); *B.P. Oil Co. v. Workmen's Com-*

---

7. Claimant attempts to analogize the instant case to *Schreffler v. Workers' Compensation Appeal Board (Kocher Coal Co.)*, 567 Pa. 527, 788 A.2d 963 (2002) (opinion announcing judgment of the Court). In *Schreffler*, the claimant sustained two distinct work-related injuries on two different dates. The second of those injuries, to the claimant's back, was accepted by the employer as compensable. The first injury, a psychic injury stemming from a prior mining accident, had not been accepted as compensable. Nevertheless, the employer paid for the claimant's psychiatric expenses for more than a decade. When the employer ceased doing so, the claimant filed a review petition pursuant to Section 413(a) of the Act. Because the psychological injury had occurred prior to the back injury, and the parties agreed that the two injuries were unrelated, the WCJ treated the review petition as a claim petition subject to Section 315 of the Act. *Schreffler* is clearly distinguishable from the present case. In *Schreffler* the parties agreed that the two claimed injuries were unrelated and resulted from two separate events. Here, both of Claimant's injuries relate back to a single event on July 27, 1994, when Claimant fell at work and injured his back. Were it not for that compensable injury, Claimant would not have undergone the surgical procedure that he now claims resulted in the loss of function in his arm.

8. We need not separately address Claimant's second issue, that his petition was timely filed under Section 315 of the Act, 77 P.S. § 602. We have determined, for the reasons set forth above, that Section 413(a) of the Act, 77 P.S. § 772, governs Claimant's petition. Section 315 has no application here.

9. Section 413(a) sets forth the relevant limitations period as follows:

> [E]xcept in the case of eye injuries, no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition.

77 P.S. § 772.

10. Dr. Bonfiglio's report dated April 25, 2002, was identified for the record, but it was not admitted into evidence. The report did not state, according to the WCJ, that Claimant suffered a permanent loss of his right arm. However, Dr. Bonfiglio did state in his deposition on December 2, 2002, that Claimant had permanently lost the use of his right arm for all intents and purposes.

*pensation Appeal Board (DeFrank),* 158 Pa.Cmwlth. 8, 632 A.2d 585 (1993) (loss of hearing). Those cases are distinguishable.

The specific loss of vision and hearing cases cited by Claimant concerned the date of a claimant's "injury" for purposes of the statute of repose in Section 315 of the Act, 77 P.S. § 602. This was because the claimants in those cases, unlike Claimant in this case, had not yet suffered a disability and properly sought compensation via a claim petition. Moreover, in specific loss cases involving the progressive diminution of vision or hearing, it is difficult for a claimant to know the precise moment of loss. Consequently, this Court has consistently held in such cases that the statute of repose in Section 315 of the Act[11] "does not begin to run until the date a doctor informs the claimant of the specific loss, which fixes the date of the injury." *Roadway Express,* 708 A.2d at 135.

Here, Claimant's post-operative loss of function in his right arm is qualitatively very different from a gradual loss of vision or hearing. This is evidenced by Claimant's own testimony on direct examination before the WCJ:

Q. Now when, if you try to look back and think of an event or something of that nature, when do you feel that [your arm] got worse so that you couldn't use it, what—is there anything that you could tell the Judge?

A. When I first came out of surgery, I had no control. None at all. It hit

me in my lips twice. I had no control of it at all. Then from the time I was in the hospital, it got a little better—you know, and when I got out of the hospital, it didn't get better, it got worse.

\* \* \*

Q. Is there anything that you can say—we're trying to pinpoint a time here in terms of the date when you felt like you couldn't use your arm for all [intents] and purposes.

A. It was since I got out of the hospital, that's all I can say. I don't know a date.

Notes of Testimony, July 29, 2003, at 11, 12–13. Thus, Claimant was aware of the problems with his right arm immediately following his surgery in December 1994; his loss did not gradually develop over time.

■ To reiterate, the Board properly treated Claimant's claim petition as a review petition under Section 413(a) of the Act, 77 P.S. § 772. Unlike Section 315, Section 413(a) requires that any petition filed to modify an NCP must be filed "within three years after the date of the most recent payment of compensation." 77 P.S. § 772. On July 15, 1996, Claimant received a final compensation payment of $125,000.[12] Accordingly, the statute of limitations expired on or about July 15, 1999, but Claimant did not file his review petition until May 16, 2002. His review

---

**11.** It states:

In cases of personal injury all claims for compensation shall be forever barred, unless, within two years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within two years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

77 P.S. § 602.

**12.** That Employer paid for Dr. Bonfiglio's examination on September 7, 2000, is of no moment. The payment of medical costs does not constitute "compensation" for purposes of tolling the statute of limitations in Section 413(a) of the Act. *O'Brien v. Workers' Compensation Appeal Board (Montefiore Hospital),* 690 A.2d 1262 (Pa.Cmwlth.1997).

petition was, as the Board found, barred by the Section 413(a) time limitation.

■ Finally, Claimant asserts that he should be permitted to seek specific loss benefits because he filed his petition within 500 weeks of the payment date of the commutation award. In support of his position, Claimant directs our attention to *Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari)*, 831 A.2d 1248 (Pa.Cmwlth.2003). In *Faulkner Cadillac* the claimant's compensation benefits were suspended pursuant to a supplemental agreement when he returned to work with no loss of earnings. He later filed a petition for specific loss benefits within the allowable 500–week period for which compensation for partial disability is payable. This Court held that Section 413(a) did not bar his claim. However, *Faulkner Cadillac* is distinguishable because in that case the claimant had not commuted his disability payments, as did Claimant.

This Court has considered the effect of a commutation in this situation and held that

> [t]he statute of limitations in Section 413(a) is like a countdown timer. For a claimant who chooses not to commute benefits, there is no statute of limitations problem because the time is regularly reset upon each new receipt of benefits. However, for a claimant who commutes benefits and receives one lump sum payment, the time begins to count down immediately after that payment and it is not reset again because there are no more payments of compensation benefits.

*Sena v. Workers' Compensation Appeal Board (Maps, Inc.)*, 813 A.2d 32, 35 (Pa. Cmwlth.2002). Our appellate courts have repeatedly warned that a claimant who

commutes his benefits runs the risk of finding himself beyond the statute of limitations when his injury worsens. *See, e.g., Sena* and *Stewart v. Workers' Compensation Appeal Board (Pa. Glass Sand)*, 562 Pa. 401, 756 A.2d 655 (2000).[13] The instant case is illustrative. Claimant's receipt of $125,000 in commuted benefits in 1996 was the last payment due on his disability benefit, and once he received that payment the statute of limitations in Section 413(a) began to run. Having failed to file a review petition to modify the NCP within three years of that payment, Claimant was time barred from asserting a right to specific loss compensation for loss of use of his arm.

For the foregoing reasons, we affirm the order of the Board.

### ORDER

AND NOW, this 11th day of October, 2006, the order of the Workers'. Compensation Appeal Board dated January 20, 2006, in the above captioned matter is hereby affirmed.

---

**13.** Conversely, an employer runs the risk of a claimant recovering and returning to work after the three-year statute of limitations has run but prior to the end of the commutation period. *Chester Upland School District v. Workers' Compensation Appeal Board (Lee)*, 820 A.2d 836, 838 (Pa.Cmwlth.2003).